## Ferguson v. Harris and Speakes.

(Decided June 22, 1923.)

### Appeal from Fayette Circuit Court.

1. Frauds, Statute of—Essentials of Contract Only Need be Stated.— The requirement of the statute that a memorandum of contract for the sale of land must be complete requires only that the memorandum shall state the essential terms of the agreement, and it need not contain all the details of the agreement, nor set it forth with due formality.

2. Frauds, Statute of—Time of Performance, Date for Computing Interest, and Security Need not be Expressly Stated in Memorandum.—A memorandum of a contract for the sale of land is not insufficient because it does not fix a date for the performance of the contract, specify the time from which interest on the deferred payments should run, or prescribe the manner in which the deferred payments shall be secured, since it will be implied performance was to be within a reasonable time and that interest was to run from the date of the transaction, and a provision for security is unnecessary, especially when, as under the Kentucky statute, the memorandum need not specify the consideration.

3. Brokers—Are Entitled to Commission When Enforceable Contract is Made.—A broker is entitled to commission when he produces a purchaser with whom an enforceable contract is entered into and upon the proposed terms, notwithstanding default of the purchaser, provided the broker acted in good faith and did not deceive the vendor into accepting an insolvent purchaser.

4. Brokers—Statement to Vendor Held Not Release of Right to Commission.—Where a broker had become entitled to his commission by the execution of an enforceable contract between his principal and a purchaser, but the purchaser had not appeared at the time fixed for closing the transaction, a remark by the broker to his principal, directing the latter to see the purchaser and stating that any arrangement made with him would be satisfactory to the broker, did not release his right to commission, though the owner thereafter substituted for the contract an option to purchase the property which the purchaser did not exercise.

5.  Brokers—Request to Owner to Deal with Purchaser Held Not to Estop Claim of Commission.—A remark by a broker that his principal should see the purchaser and that any arrangements made with him would be satisfactory to the broker did not authorize the principal to substitute an option agreement for the enforceable contract previously procured by the broker, but only to change the contract in details, and therefore did not estop the broker from claiming his commission.

JOHN J. WILLIAMS for appellant.

ALLEN & DUNCAN for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

Appellees and plaintiffs below, L. D. Harris and George D. Speakes, were partners engaged at Paris, Kentucky, in the business of real estate brokers. Some time in the latter part of October, 1917, appellant and defendant below, J. W. Ferguson, listed for sale with plaintiffs his farm in Fayette county containing 444 acres at $135.00 per acre. They began a search for a purchaser and on November 6 following they induced W. E. Davis, a prospective purchaser, to look at the farm which was shown to him by Harris, and the latter arranged with Ferguson for a meeting between the two at Ferguson's house on that evening. The conference lasted about two hours or more and resulted in Ferguson writing and signing this proposition: "I hereby agree to sell to W. E. Davis my farm at Avon, Ky., for $140.00 per acre, including farm implements and teams, one-third cash, bal. 1 and 2 years with interest. This proposition is binding for ten days but may be withdrawn any time before accepted by mail. Engine cutter not included. This Nov. 6th, 1917."

It is shown in the record that the price was increased in the proposition five dollars per acre above the listed price with plaintiffs, in order to take care of the personal property included in the proposition. After leaving Ferguson's house on the same day Davis addressed to him this communication of acceptance, which he signed: "Hereby I accept your proposition to accept your farm at Avon, Fayette county, Kentucky, containing, according to your estimate, 444 acres at the price of $140.00 per acre, and in full accord with the terms of the written proposition which you made me. This is my acceptance of the proposition and my agreement to purchase your farm and other property, as per proposition, and you may get up deed when you so desire, but I suppose that I can see you

next Saturday and that we can arrange for the completion of the trade and execute the papers. Upon receipt of this acceptance please advise me that you have received it and when and where to meet you.'' Whereupon defendant telegraphed him, ''Will meet you in Lexington on Saturday.'' Davis failed to appear on Saturday or on any other day for the purpose of executing the contract, and in the meantime Ferguson and Harris, who seems to have been the chief actor for the firm of Harris and Speakes, had some conversations concerning the matter, to one of which we will hereafter refer.

Twenty days after the acceptance of defendant's proposition by Davis the two met in a hotel in Lexington and engaged in a conversation or negotiations concerning the sale of the farm and the contract which they had made with reference thereto. That meeting resulted in the execution of a new and independent contract which was drawn with extreme particularity and formality, and in which defendant gave to Davis and a joint purchaser, J. E. Johnson, an option to buy the land upon the same terms contained in the original proposition of November 6, 1917, as to price and terms of payment, but it differed from the first contract in that Davis and Johnson were to have until March 1, 1918, to determine whether they would accept the option and purchase the farm, and it was stipulated and agreed that if they declined to do so they would forfeit to defendant the $2,500.00 which they paid at that time. A short while prior to the agreed date (March 1, 1918) for the carrying of that option into an executed conveyance and otherwise performing its terms, Davis and Johnson notified defendant that they declined to exercise the option and that he could keep the $2,500.00 deposit left with him, which he did. The agreed commission due plaintiffs under the terms of listing the land with them amounted to $1,198.80, and this action was filed by them against defendant in the Fayette circuit court to recover that sum upon the ground that they had complied with their brokerage agreement in every respect and that when Davis accepted defendant's proposition on November 6, 1917, their commission was earned and that they had demanded of defendant payment of it which he refused to make.

The answer, as amended, consisted of a denial of some material parts of the averments of the petition, and in another paragraph averred that between November 6,

the date of the first contract, and the 26th of the same month, the date of the option contract, Harris said to defendant in a conversation about Davis refusing to comply with his contract of November 6: "You go see him, and any arrangement you make with him will be satisfactory to me," and that pursuant to and because of that statement the option contract was executed, and defendant relies on it as a relinquishment of plaintiff's right to commission on any sum in excess of the $2,500.00 forfeit, and further, that the statement and defendant's action thereon constituted an equitable estoppel against plaintiffs from claiming commission under the original contract, to which paragraphs the court sustained a demurrer filed by plaintiffs. Another paragraph of the answer pleaded certain ordinances of the city of Lexington requiring a license fee of real estate brokers, and that plaintiffs had not complied therewith, and for that reason could not enforce their contract for the commissions sued for, to which paragraph a demurrer filed by plaintiffs was likewise sustained upon the ground that plaintiffs were not regularly engaged in the business of real estate brokers in the city of Lexington and that the casual meeting between Harris and Davis resulting in the execution of the original contract was not transacting the business of real estate brokers in Lexington within the meaning and contemplation of the ordinance.

A trial before a jury resulted in a directed verdict in favor of plaintiffs for the full amount of their commissions, upon which judgment was rendered, and the court declining to set it aside on a motion for a new trial defendant has appealed, urging through his counsel as grounds for a reversal (1), that the above inserted proposition and acceptance did not constitute an enforceable contract for the sale of real estate and (2), that plaintiffs by reason of the alleged statement of Harris to defendant estopped themselves from insisting on the right to recover.

In support of ground (1), it is strongly insisted that the memorandum of the agreement for the sale of real estate required by our statute of frauds (section 470 of the present statutes), and which in this case is embodied in the above proposition of defendant and its acceptance and communication by Davis, was not sufficiently full and explicit to enable the former to specifically enforce it against the latter. Its defects in those respects, as contended, are, that it does not fix the time for the execution

of the deed and turning over the possession to the purchaser; that it does not specify from what date the deferred payments bear interest; that it does not specify any security for the deferred payments, and that it does not point out how those payments are to be evidenced. The grounds for the contentions of defendant's counsel are sought to be sustained from his conclusions drawn from the definition of the completeness of the memorandum required by statutes of frauds generally as stated in opinions of courts and by text writers; a good illustration is found in 27 Corpus Juris, 267-9, and 277, wherein the text says: ''To be sufficient as a note or a memorandum under the statute of frauds, a writing must be complete in itself, leaving nothing to rest in parol. The entire agreement must be expressed in the writing. The contract cannot rest partly in parol. The general rule that a contract which is not entirely in writing is to be treated as a parol or verable contract applicable in determining whether the contract is within the inhibition of the statute of frauds. The memorandum must contain all the essential elements or material parts of the contract. Thus the note or memorandum must disclose the subject matter of the contract, the parties thereto, the promise or undertaking, the terms and conditions, and, in some but not all jurisdictions, the price or consideration.'' Substantially to the same effect is the text in 25 R. C. L.; section 276, pages 645-646, and Jones on Evidence, vol. 3, section 429, but a careful reading of those texts will show that the writing or memorandum will be sufficiently complete so as to create an enforceable contract if it contains the *essential terms* of the agreement between the parties.

Hence, in the reference to Ruling Case Law it is said: ''The memorandum need not state the particulars of the contract if its essential terms and substance are stated,'' and succeeding sections and pages point out that such terms as the law will imply from what is stated need not be inserted in the memorandum, since as said on page 643 of the same volume, ''The statute does not require the agreement to be in writing but merely a memorandum thereof, and it is the general rule that a memorandum wholly untechnical in form may be sufficient.'' In the reference to Jones on Evidence, it is also shown that only the *essential terms* of the contract are required to be stated in the memorandum and that they are (a), the names of the parties to the agreement; (b), a sufficient description of the thing sold, and (c), that the mem-

orandum be duly executed by the proper signatures, or subscriptions, and in the same work, as well as the reference to Ruling Case Law, it is expressly stated that where no time for performance of the contract is contained in the memorandum the law will imply that it must be performed within a reasonable time, and that where the memorandum contains no statements with reference to deferred payments the implication will arise that it was intended to be cash at the time, and that where interest on deferred payments is mentioned without any time from which it was to begin it will be implied that interest was to run from the date of the transaction, and "the failure to state as to whether a purchase money mortgage is to be given for the deferred payments provided for has been held not to render the memorandum insufficient." Especially is the latter statement true when, as under our statute, the memorandum need not contain the consideration for the agreement. The authorities will thus be found in accord with the statement that if the memorandum expresses or specifies the *essentials* of the contract, and from them the formal details of the agreement may be implied by the law, it is then sufficient, and that it is not necessary in order to render it so for it to contain all the details of the agreement or that they should be set forth in the memorandum with due formality, and this court has uniformly so construed our statute of frauds with reference to the sale of real property. Some of the many cases in which it was done are Tapp v. Nock, 89 Ky. 414; Winn v. Henry, 84 Ky. 48; Tyler v. Onzts, 93 Ky. 331; Hyden v. Perkins, 119 Ky. 188; Alford v. Wilson, 95 Ky. 506; Ferguson v. Cabell, 141 Ky. 499; Foor v. Mechanics Bank & Trust Co., 144 Ky. 682, and Schmidt v. Martin, 199 Ky. 785, which latter case and the Tapp case expressly held that when no time was fixed for executing the memorandum agreement the law would imply a reasonable time, and in a number of the cited cases the memorandum agreement was no more specific and certain than the one involved here and in some of the cases it was not so much so. We, therefore, conclude that contention (1), can not be sustained.

Taking up now for consideration contention (2), the law generally is that a real estate broker is entitled to his commissions when he produces a purchaser who is not only then, but at all times, ready, able and willing to purchase the property on the prescribed terms, though the vendor refuses to enter into the enforceable contract,

and he is also entitled to his commissions whenever an enforceable contract is entered into and the purchaser is accepted upon the proposed terms, provided the broker acted in good faith and did not deceive the vendor into accepting an insolvent purchaser. Casey v. Hart Wallace & Co., 188 Ky. 441; Coleman's Executor v. Meade, 13 Bush 358, and other cases referred to therein.

Here, as we have seen, there is no question of the plaintiffs' good faith in presenting Davis as a purchaser and defendant accepted him and entered into an enforceable contract with him, and under the rule, as announced in the cases *supra,* plaintiffs' commissions were earned at the time of the execution of that enforceable contract. So that the conversation with plaintiff, Harris, relied on could not be regarded as releasing defendant from the payment of the commissions, if for no other reason than that there was no consideration therefor. Neither can the pleaded statement of Harris be treated or regarded as constituting an estoppel against him. It did not purport to confer, nor can it be construed as conferring, authority on defendant to release Davis from the original contract or to direct him to rescind it entirely and enter into a new and independent option contract with Davis. At most the only legitimate construction that can be placed upon it was that Ferguson might amend, modify or alter some of the express or implied terms of that contract so as to meet any reasonable desires or objections of Davis and to thereby induce him to carry it out by eliminating any minor objections he might have to doing so, such as, for instance, postponing the implied time when it was to be performed, or extending the time of the deferred payments, or dividing them up into a greater number of smaller amounts, or providing for interest on them from the date of their maturity instead of from the date of the conveyance as implied by law, or, possibly, by accepting a reasonable reduction in the price to be paid for the land; but the statement, if made, evidently did not authorize defendant to rescind or entirely abrogate the contract and substitute in lieu thereof a wholly new and independent one, nor was it susceptible of that construction.

We, therefore, conclude that the court was right in directing a verdict in favor of plaintiffs, and the judgment is affirmed.