## Shields, et al. v. Taulbee.

(Decided November 16, 1923.)

### Appeal from Grant Circuit Court.

1. Brokers—Proof of Lack of Cash Not Proof of Inability to Buy.—In an action by brokers for a commission, proof that the purposed purchaser furnished did not have in his possession cash required for first payment was not evidence that he was unable to purchase and make such payment, as he might have other property sufficient to procure the cash necessary.

2. Brokers—Commission Earned When Binding Contract Entered Into.—If the purchaser under a contract which may be specifically enforced is ready and financially able to perform at the time stipulated, brokers' commissions are earned.

3. Brokers—Where Seller Accepts Purchaser of his Own Accord with Knowledge of Financial Inability, Commissions Earned.—If the broker knows that purposed purchaser is financially unable to carry out his contract of purchase and fails to inform the seller, who does not know of it, or if the broker represents to the seller that the purchaser is financially able to perform the contract, when in fact he is not, and the seller has no information to the contrary, commissions are not collectible if the contract is rescinded or abandoned because of purchaser's inability to perform it, but

the opposite is true where there is no deceit practiced by the broker nor any false representations made by him to seller and the latter of his own accord accepts the purchaser furnished and enters into the contract, notwithstanding the purchaser is not financially able to perform it.

C. E. O'HARA for appellants.

DeJARNETTE & HARRISON for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

Defendant and appellee, M. T. Taulbee, owned a farm in Grant county containing about 311 acres. Plaintiffs and appellants, J. W. Shields, E. C. Antrobus and A. R. Abernathy, were partners engaged in the business of real estate brokers under the firm name of "The Shields Real Estate Agency." On August 8, 1919, defendant placed his land with plaintiffs for the purpose of sale at the price of $100.00 per acre. The written contract provided that it should continue until March 1, 1920, and thereafter until it was revoked by defendant in writing and that if plaintiffs at any time during the continuance of the agency contract should effect a sale, or if defendant did so to a person procured by plaintiffs, the latter's commission should be three per cent of the sale. Shortly thereafter plaintiffs found Aaron Parsons who desired to purchase a farm in that vicinity and informed him of the fact that they held defendant's farm for sale and of the price as well as the character of land. Somewhere in the first part of September following, Parsons called on defendant in person and without consulting plaintiffs verbally agreed upon terms of sale, the price being $30,000.00; one-fourth of it, or $7,500.00 to be paid in cash at the time for the execution of the deed, which was March 1, 1920, and the balance upon deferred payments. Within a few days after that agreement the verbal contract was reduced to writing and Parsons was put in possession of the farm. On the date provided for the execution of the deed and the carrying out of the contract the latter had not succeeded in raising the first payment of $7,500.00 and it was abandoned, but shortly thereafter defendant sold to Parsons 175 acres of his land for the price of $17,000.00.

Upon defendant's refusal to pay plaintiffs their commission on the agreed consideration of $30,000.00 for the whole farm they brought this action against him to re-

cover their commissions amounting to $900.00, and upon trial the jury, under the instructions given by the court, returned a verdict for defendant, which the court declined to set aside on plaintiffs' motion for a new trial and they have appealed. The answer as amended admitted the contract to sell the farm to Parsons but pleaded that defendant was ignorant of his financial ability and that plaintiffs knew it and fraudulently concealed it from him and that they ''represented and stated to him that said Parsons was financially able to comply with his contract of purchase, and to pay for said farm according to said contract; that relying on said representation and being deceived by the concealment of the true financial ability of said Parsons, he entered into said contract with him, and but for said concealment of the true facts, and the representations made, he would not have entered into said contract.'' It is doubtful if the excerpt from the amended answer contains a defense, since it does not allege that Parsons was not financially able to perform the contract. At most that fact can only be surmised from its being inferentially averred. But, treating the pleading as sufficient, we think the judgment erroneous for reasons hereinafter stated.

There is no proof whatever in the record that Parsons was not financially able to make the first payment according to the terms of his contract, but on the contrary it would appear that he possessed enough property to enable him to do so, because it is shown that he owned at least 100 acres of land worth between nine and ten thousand dollars and, it is not to be overlooked, that defendant almost immediately upon the abandonment of the sale for the entire farm sold a part of it to him for $17,000.00. The fact, as is shown by the proof, that Parsons did not have in his possession the $7,500.00 in cash on March 1, 1920, by no means establishes the further fact that he did not own property sufficient to procure it. Many a man may be worth, over and above his indebtedness, a large amount of property and yet not have in cash at a particular time a much less amount. So that, the proof on this essential fact (as a necessary element of the defense) was wholly unproven. It was agreed, both by the pleadings and the testimony, that a binding contract which could be specifically enforced was entered into between defendant and Parsons, and under the law if the purchaser under such a contract is ready and financially able to per-

form it at the time stipulated the brokers' commissions are earned. Ferguson v. Harris & Speaks, 200 Ky. 146; Croxton's Executors v. Henry & Fleenor, 193 Ky. 318, and other cases cited in those opinions. However, the same cases also hold that if the broker knows that the proposed purchaser is financially unable to carry out the contract and fails to inform the seller, who does not know it, of that fact, or if they represent to the latter that the proposed purchaser is financially able to perform the contract, when in fact he is not, and the seller has no information to the contrary, the commissions are not collectible if the contract is subsequently rescinded or abandoned because of the purchaser's inability to perform it. But, where there is no such deceit practiced by the broker nor any false representations made by him to the seller and he of his own accord accepts the purchaser furnished by the brokers and enters into the contract, he will be liable for the commissions, notwithstanding the latter may not be financially able to perform it. Defendant testified at the trial that two of the plaintiffs told him after the verbal contract was entered into, but before it was reduced to writing, that the purchaser was able to take and pay for the place. He said that the statement was made to him by Shields and Antrobus a few minutes before the contract was reduced to writing, but which they each denied. Under the rule as stated, *supra,* if it was so made and was false and defendant knew not to the contrary, plaintiffs would not be entitled to recover. The preponderance of the testimony, however, is to the effect that defendant entered into the contract without consulting plaintiffs and, as it would seem, upon his own information and responsibility and without any practiced deceit or representations by them, in which case he would be liable for the commissions, under the doctrine, *supra,* even though Parsons was financially unable to perform the contract. Under the state of the proof (if there had been any showing that Parsons was not financially able to carry out the contract), it was the duty of the court to instruct the jury, in substance, to find for plaintiffs, unless they believed from the evidence that plaintiffs knew that Parsons was unable financially to carry out the contract and concealed that fact from defendant, or that they falsely represented to him that Parsons was able to perform it, when in fact he was not.

An instruction was offered by plaintiffs conforming, in substance, to what we have stated, but the court declined to give it and gave two instructions which are complicated and so worded as to confuse the jury into the belief that, unless the contract was actually carried out by its due execution on March 1, 1920, plaintiffs would not be entitled to their commissions. In other words, the instructions are so framed as that the jury would be authorized to find for defendant, unless they believed that the contract, as stated in the instruction, "was arranged in all of its details and conditions, including the time and manner of payment of said farm to said Parsons." It is, therefore, clear that the motion for a new trial should have been sustained, not only because of the confused condition of the instructions, but also because it was assumed therein that Parsons was unable financially to perform the contract in the absence of sufficient proof of that fact.

Wherefore, the judgment is reversed with directions to set it aside and grant the new trial and for proceedings consistent with this opinion.