**715 SPENCER CORPORATION,
Plaintiff,**

v.

**CITY ENVIRONMENTAL SERVICES,
INC., et al., Defendants.**

**No. 3:98 CV 7605.**

United States District Court,
N.D. Ohio,
Western Division.

Aug. 4, 1999.

Marvin A. Robon, Gregory Roether Elder, Marshall W. Guerin, Barkan & Robon, William C. Eicholt, Steven B. Winters, Cline, Cook & Weisenburger, Toledo, OH, for Plaintiff.

David Gordon Jennings, Isaac,Brant, Ledman & Teetor, Columbus, OH, Thomas J. Antonini, Robison, Curphey & O'Connell, Toledo, OH, Thomas M. Fallucca, John J. O'Shea, Fallucca & O'Shea, Detroit, MI, for Defendants.

## MEMORANDUM OPINION

KATZ, District Judge.

This matter is before the Court on Defendants' motion for partial summary judgment. For the following reasons, Defendants' motion will be granted. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332.

## BACKGROUND

At all times relevant to this suit, Plaintiff 715 Spencer Corporation ("Spencer") owned a piece of industrial real estate ("the Property") located at 715 Spencer Street, in the city of Toledo, Ohio. Defendant City Environmental Services, Inc. ("City Environmental") is in the business of, *inter alia,* recycling paper waste.

On June 14, 1996, Spencer and City Environmental entered into a commercial lease and option agreement whereby City Environmental agreed to lease a portion of the Property, and was granted an option to purchase the said real Property for $777,-000.00 on or before May 1, 2006. The option agreement set forth the following requirements for City Environmental to exercise the option to purchase:

*Section 4. Manner of Exercise.* This option shall be exercised ("Notice of Exercise") by Optionee giving written notice to Optionor by either tendering such written notice in person to Optionor or by sending such written notice to Optionor, certified mail, postage prepaid, which notice shall be effective at the time it is placed in the United States mails. The date upon such written notice is tendered in person or the date when such notice is mailed as provided herein, shall be the exercise date. The notice shall designate a date for closing which is not less than thirty (30) and not more than one hundred twenty (120) days beyond the notice date. This Option shall be exercised no later than the Expiration Date.

The purpose of the option, apparently from the beginning, was to permit City Environmental to establish a transfer station and truck terminal in Toledo at some future time. In 1997, City Environmental decided to establish such a terminal. At that time, it entered into negotiations with Spencer for the purchase of the Property on new terms, different from those provided in the option agreement.[1] At least two Draft purchase agreements were made in connection with those negotiations, but none was executed by City Environmental. On December 31, 1997, City Environmental sent a copy of the second draft of the purchase agreement to Spencer. The cover letter for that document, drafted by City Environmental's counsel, contains the statement: "we look forward to consummating this transaction as soon as possible."

During the purchase negotiations, both parties behaved as though they believed the deal would be consummated. Spencer took the Property off the market in reliance on its belief that City Environmental would purchase the Property. City Environmental completed title work, surveys and environmental studies on the property. City Environmental also began occupying portions of the property which were not part of the leased premises, such as a free-standing steel building, a warehouse, office space previously used by Spencer's president and sole shareholder, Richard Conley, and vacant acreage. Additionally, City Environmental began to assume control over prospective and existing tenants. At least one prospective tenant was turned away at City Environmental's request. City Environmental also instructed Spencer not to renew the existing leases on the property.

On January 14, 1998, Defendant USA Waste Services, Inc. ("USA Waste") acquired City Environmental.

At some point, between November of 1997 and February of 1998,[2] Spencer's

---

**1.** Spencer has argued in its brief that City Environmental orally exercised the purchase option in late summer or early fall of 1997. (Pl.'s Mem. in Opp., at 5 (citing Conley Dep. at 77–80)). Spencer has not, however, filed the deposition that allegedly contains the testimony to that effect. Since a motion for summary judgment is decided on the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any"—and not on argument unsupported by any evidentiary material in the record—the Court cannot consider that allegation.

**2.** Asciutto has testified that he believes said meeting occurred in late 1997. Conley be-

president Richard Conley met with City Environmental's authorized agent George Asciutto to discuss the terms of the purchase. At that meeting, both men shook hands and agreed that the sale was a "done deal." Spencer has argued, albeit without filing any supporting evidence into the record, that City Environmental tendered a $10,000 good faith deposit to Spencer at around that time, but Spencer refused to accept it before closing the deal.

In February, 1998, Conley discussed the sale of the Property and the exercise of the option contract with City Environmental's counsel Bryant Frank. Conley testified as follows at his deposition:

Q. Did you ever have any discussion with any representative of City Environmental regarding whether or not the exercise of the option had to be in writing?

A. Yes, I did.

Q. Who did you have a discussion with?

A. Bryant Frank.

　　*　　*　　*　　*　　*　　*

Q. And what was the discussion you had with Mr. Frank?

A. I remember him saying to me that it wasn't necessary, we're gonna close this thing within a week or two, and he didn't want to be bothered typing out another agreement or whatever.

Q. He said it wasn't necessary what?

A. It wasn't necessary, we're gonna close it within a week or two, and it wasn't long after that his secretary called me and set up the closing date, and I believed him.

　　*　　*　　*　　*　　*　　*

Q. And as best you can recall, you think it was late February, '98 when you talked to Mr. Frank.

lieves the meeting occurred in February, 1998. For the purpose of ruling on Defendant's motion for summary judgment, the

A. Yes.

(Conley Dep. at 119–121).

In late February or early March, 1998, a merger was announced between USA Waste and Defendant Waste Management, Inc. ("Waste Management"). The merger with Waste Management eliminated City Environmental's need for the Property because Waste Management already had established facilities within the City of Toledo.

In April, 1998 a fire, which caused substantial damage, occurred on the Property. Approximately one week thereafter, City Environmental contacted Conley and informed him that City Environmental no longer wanted to purchase the property. Allegedly, City Environmental informed Spencer that the decision not to purchase the property was based on the fire damage and the acquisition of City Environmental by USA Waste. On April 30, 1998, City Environmental sent Conley a letter which provided the thirty-day written notice required to cancel the commercial lease on the property. The termination of the commercial lease also resulted in the termination of the option. In June, 1998 City Environmental reimbursed Spencer $3,463.90 for out-of-pocket expenses which it incurred during the negotiations.

Spencer filed a complaint in this Court on October 14, 1998, seeking specific performance of the contract to sell the Property. In the first six Counts of its complaint, it alleges (I) breach of contract, (II) breach of the covenant of good faith and fair dealing, (III) detrimental reliance, (IV) tortious interference with contract, (V) negligent misrepresentation and (VI) fraud. Those six Counts rely on Plaintiff's assertion that City Environmental exercised its option to purchase the Property at some time prior to or during February 1998, and later reneged on the agreement. In Count VII, which is not at issue in the present motion, Spencer claims that City

Court will accept Plaintiff's allegation that the meeting occurred in February, 1998.

Environmental negligently caused the April 1998 fire. Defendants have filed a motion for summary judgment on the first six Counts. Plaintiff has filed opposition, and Defendants have replied thereto. The Court addresses the parties' contentions below.

## DISCUSSION

### A. Summary Judgment Standard

As an initial matter, the Court sets forth the relative burdens of the parties once a motion for summary judgment is made. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Of course, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2553. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (*quoting* Fed.R.Civ.P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553.

Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c).

### B. Issues Before the Court

Plaintiff Spencer asserts that it is entitled to specific performance of the option agreement for the sale of the Property that was included in the original lease/purchase option agreement. Specifically, Spencer claims that: (a) City Environmental waived the writing requirement and exercised the option agreement orally by representing that the sale was a "done deal" and that a writing was not necessary; and (b) City Environmental exercised the option agreement in writing in the letter stating that "we look forward to consummating this transaction as soon as possible."

Spencer does not contend that City Environmental ever tendered unequivocal written notice of its exercise of the option by stating in a written document that it was exercising the option to purchase the Property. Nor does Spencer contend that any of the parties' oral communications or other conduct would create an enforceable contract for the sale of the Property in the absence of the option agreement.

Therefore, the Court must address two issues in ruling on Defendants' motion for partial summary judgment. First, the Court must determine whether a reasonable trier of fact could find that City Environmental orally exercised the purchase option. In order to prevail on that issue, Spencer must show both (a) that City Environmental attempted orally to exercise the purchase option, and (b) that such attempt was valid, in light of the contract clause requiring the option to be exercised in writing. Second, the Court must determine whether a reasonable trier of fact

could find that City Environmental exercised the purchase option in writing.

### C. Option Agreements Generally

"The traditional view regards an option as a unilateral contract which binds the optionee to do nothing, but grants him the right to accept or reject the offer in accordance with its terms within the time and in the manner specified in the option." 1 Samuel Williston, A Treatise on the Law of Contracts § 516, at 718 (4th ed.1990). An option contract "prevents the party who signed it from disposing of the property under consideration until its expiration." *Plikerd v. Mongeluzzo,* 73 Ohio App.3d 115, 123, 596 N.E.2d 601, 606 (1992). "[T]he party having the option is, of course, not bound to exercise it; he can withdraw from it at any time prior to the exercise thereof." *Id.*

### D. The Effect of the Draft Purchase Agreements on the Option Contract

It appears to be undisputed that no draft purchase agreement was ever executed by both parties. There are no facts which indicate, nor does either party argue, that any of the purchase agreements should be enforced. It follows, therefore, that the option agreement remains unaltered by the drafts of the purchase agreement because at no time did any of these drafts become a binding contract.

### E. Exercise of the Option Agreement

Spencer asserts that City Environmental exercised its option to purchase and thus became contractually obligated to buy the property. As noted above, the terms of the option agreement provided that the option could only be exercised by the optionee by giving written notice to the optionor. It is undisputed that City Environmental never provided Spencer with unequivocal written notice of its election to exercise the option. City Environmental denies that it exercised the option in any

manner. However, Spencer asserts that the option was exercised and that City Environmental is now bound by its terms because City Environmental exercised the option: (1) orally on repeated occasions and (2) within a letter from City Environmental's in-house attorney.

### 1. Oral Exercise of the Option

Spencer contends that City Environmental orally exercised the option to purchase the property in late Summer or early Fall of 1997. As discussed above, Spencer can prevail on that contention only if City Environmental attempted orally to exercise the purchase option, and if that attempt was valid, in light of the contract clause requiring the option to be exercised in writing.

The first issue the Court must decide, therefore, is whether Spencer has adduced sufficient evidence from which a reasonable trier of fact could find that City Environmental attempted orally to waive the writing requirement and to exercise the purchase option.

■ Under Ohio law, a waiver is a relinquishment of a known right by a clear, unequivocal decisive act. *White Co. v. Canton Transp.,* 131 Ohio St. 190, 198, 2 N.E.2d 501, 505 (1936). Spencer argues that City Environmental's counsel Bryan Frank waived the writing requirement by telling Conley that a writing "wasn't necessary, we're gonna close this thing within a week or two, and he didn't want to be bothered typing out another agreement or whatever." (Conley Dep. at 121.) [3] Plaintiff contends that this was an explicit waiver of the writing requirement within the option contract and an exercise of the option.

■ No reasonable factfinder could conclude that Frank's statement constituted a waiver of the writing requirement and ex-

---

**3.** Spencer has also alleged in its brief that Conley testified at his deposition that City Environmental repeatedly exercised the option orally. Since the portions of Conley's deposition cited by Spencer are not in the record, the Court cannot consider that allegation.

ercise of the purchase option, even assuming that City Environmental had the ability to make such a waiver. Plainly read, Frank's statement merely indicates that exercising the option would be unnecessary because the parties were about to close on the property. Exercising the option would be pointless once the parties closed on the purchase agreement because the terms of the purchase agreement would serve as the contract rather than the terms contained in the option contract. "Typically, the option is for the benefit of the optionee." 1 Samuel Williston, A Treatise on the Law of Contracts § 516 at 722 (4th ed.1990). If City Environmental was able to negotiate a purchase agreement with terms that were more favorable to it than those terms provided in the option contract, City Environmental would no longer need the protection of the option contract. Plaintiff's tortured construction of Frank's statement to indicate waiver of an option that City Environmental clearly did not intend to exercise is not a clear, unequivocal decisive act sufficient to satisfy the requirements for waiver under Ohio law.

In apparent recognition that Mr. Frank's statement did not constitute an unequivocal exercise of the option, however, Plaintiff asserts that the oral statement must be considered in conjunction with the other ongoing factors in order to be construed as an oral waiver or oral exercise of the option. Plaintiff lists the following additional events: (1) City Environmental ordered and obtained title work, surveys and an environmental study; (2) City Environmental exercised dominion and control over the real property by occupying portions of the real property that were not part of the leased premises; (3) City Environmental exercised dominion and control over perspective tenants; (4) City Environmental tendered $10,000.00 good faith money to Mr. Conley; (5) City Environmental and Spencer resolved all environmental issues and represented, while shaking hands, that it was a "done deal"; and (6) City Environmental set a closing date.

From the above factors, it is unquestionable that Spencer believed that City Environmental intended to purchase the property. However, none of these factors raise a question of material fact from which a reasonable factfinder could find that City Environmental *exercised the option agreement*. As discussed above, it is undisputed that City Environmental made all of its representations in the context of negotiations aimed at executing a *purchase agreement* on more favorable terms than those contained in the option agreement. Not only would the new purchase agreement render the exercise of the option to purchase unnecessary, City Environmental knew that exercise of the option would obligate City Environmental to terms that were less favorable to it than those contained within the new purchase agreement. Neither the fact that City Environmental underwent the preparatory title, survey and environmental work nor the fact that Spencer released partial control of the building and tenants prematurely in anticipation of the sale illustrate the City Environmental intended to exercise its option. The $10,000.00 good faith money tendered to Mr. Conley, which Mr. Conley subsequently refused, was not a requirement for the exercise of the option to purchase. Furthermore, the setting of the closing date and the indication that it was a "done deal" point only toward the anticipation of the sale, and not toward the exercise of the option.

Plaintiff has not adduced sufficient evidence from which a reasonable finder of fact could determine that the option was exercised. Therefore, Plaintiff has failed to raise a triable issue with respect to whether Spencer orally exercised the option contract.

Furthermore, although it is not necessary to the Court's determination that no triable issue of fact exists on whether City Environmental orally exercised the option contract, the Court finds that the alleged oral waiver of the writing requirement

could not be enforced against City Environmental on these facts at any rate.

■ The performance of a condition precedent in a written contract may be waived by the party to whom the benefit of the condition runs, whether expressly or by implication. *See Ohio Farmers' Insurance Co. v. Cochran,* 104 Ohio St. 427, 432, 135 N.E. 537, 538 (1922) (holding that the insurance company waived the condition precedent of requiring a formal proof of loss by its actions and conduct).

Spencer argues that the writing requirement in this case ran to the benefit of City Environmental, as optionee, and that City Environmental waived the writing requirement by its conduct, which amounted to an oral exercise of the option contract. Generally, the writing requirement in an option requirement runs in favor of the seller/optionor because it provides proof that the option was or was not exercised. *See Bahner's Auto Parts v. Bahner,* No. 97 CA 2538, 1998 WL 470494, at *9 (Ohio App. July 23, 1998) (finding that the benefit of the writing requirement within the option contract runs toward the optionor); *Ferguson v. Harris,* 200 Ky. 146, 254 S.W. 329 (1923) (holding that the optionor may modify requirements in an option contract to appease the optionee). This is because in the usual case, the buyer/optionee is attempting to enforce a sale agreement against an unwilling seller/optionor. In the absence of a writing requirement, an unwilling seller/optionor would have great difficulty proving a negative—the absence of an affirmative exercise of the option. The writing requirement places the evidentiary burden squarely on the shoulders of the party seeking enforcement of the option: the buyer/optionee.

■ This matter is unusual, however, in that it is the seller/optionor who is attempting to enforce the contract against the buyer/optionee, and the buyer/optionee is seeking the protection of the writing requirement. Common sense, therefore, dictates a conclusion that the writing requirement runs in favor of the buyer/optionee as well as the seller/optionor when

that party is seeking the protection of the contractual clause in issue. It would violate logic and common sense for this Court to permit a plaintiff—in whatever role—to avoid a contractual clause that demands a writing merely by alleging that the defendant orally waived the writing requirement, and in the absence of the defendant's stipulation that such writing requirement was waived. Such a rule would effectively permit plaintiffs to undermine writing requirements in every contract into which they had entered, thereby leading to the preposterous result that parties to contracts would not be able to rely on writing requirements they had placed into such contracts. This Court will not countenance such a result.

Accordingly, the Court finds that no triable issue of fact exists on whether City Environmental orally exercised its purchase option on the Property.

### 2. Written Exercise of the Option

Plaintiff also asserts that a genuine issue of material fact exists upon which a reasonable factfinder could find that December, 1997 letter in which he stated that "we look forward to consummating this transaction as soon as possible," taken in connection with the factors previously listed, constitutes a written exercise of the purchase option.

■ The statement contained in Frank's letter is clearly a reference to completing the sale of the property in the future. There is no evidence that Frank was referring to the option agreement rather than a purchase agreement or that the statement affects any contractual obligations of the parties. It is merely an optimistic statement about the purchase of the property which at that time all parties believed would be forthcoming. Indeed, the fact that the statement was included as part of a cover letter for the second draft purchase agreement indicates that Frank did not intend the statement to be an exercise of the option; if it had been, there would have been no reason to include the draft purchase agreement. No reasonable jury

could construe Frank's statement as providing written notice of the option to purchase.

### F. Spencer's Additional Claims

In its complaint, Plaintiff also alleges breach of duty of the covenant of good faith, detrimental reliance, tortious interference of contract, negligent misrepresentation and fraud. Defendants have moved for summary judgment on each of these counts. Plaintiff did not oppose Defendants' motion as to these claims. Therefore, the Court will only briefly address the merits of Defendants' motion on the remaining issues.

### 1. Breach of the Covenant of Good Faith and Fair Dealing

Plaintiff asserts that Defendants owed a "duty and/or covenant of good faith and fair dealing, implied in every contract, to cooperate in the consummation of the sale of the Real Property and purchase the Real Property." Plaintiff contends that Defendants "breached their duty and/or covenant of good faith and fair dealing towards Plaintiff, by acting and failing to act as aforesaid in refusing to purchase the Real Property."

■ There is no evidence in the record that Defendants acted in bad faith. Defendants were not contractually bound to purchase the property and their refusal to exercise their option or execute a purchase agreement does not constitute a breach of the covenant of good faith. City Environmental's conduct of making optimistic statements about their plans to purchase the property during the negotiations and then their subsequent refusal to purchase the property does not amount to an actionable claim for breach of the covenant of good faith and fair dealing. Defendants' motion for summary judgment as to Count II of Plaintiff's complaint is granted.

### 2. Detrimental Reliance

■ A claim of detrimental reliance is not a separate cause of action under Ohio law but rather an element of several claims that exist in equity to enforce a contract. *Gottfried–Smith v. Gottfried,* 119 Ohio App.3d 646, 650, 695 N.E.2d 1229, 1231 (1997). Defendant's motion for summary judgment as to Plaintiff's claim for detrimental reliance is granted.

### 3. Tortious Interference with Contract

■ Count IV of Plaintiff's complaint asserts that "USA Waste and Waste Management" tortiously interfered with Spencer's contractual relations. Defendants correctly point out that in order to prevail on a claim for tortious interference with a contract, Plaintiff must prove the following: (1) the existence of a valid and binding contract; (2) the wrongdoer's knowledge of the contract; (3) the wrongdoer's procurement of a breach of that contract; (4) lack of justification; and (5) damages. *Kenty v. Transamerica Premium Ins. Co.,* 72 Ohio St.3d 415, 418, 650 N.E.2d 863, 866 (1995). Defendants assert that USA Waste cannot have interfered with the contract because at the time the decision was made to discontinue negotiations for the property, USA Waste had acquired City Environmental. Since a party cannot tortiously interfere with its own contract, USA Waste cannot be liable for this tort. *Contadino v. Tilow,* 68 Ohio App.3d 463, 469, 589 N.E.2d 48, 52(1990).

Additionally, since Plaintiff has failed to prove the existence of an enforceable purchase agreement and has been unable to show that City Environmental exercised the option agreement, an enforceable contract does not exist. Therefore, Plaintiff fails to fulfill the first element of its claim for tortious interference with a contract. Defendant's motion for summary judgment with respect to Court IV against both USA Waste and Waste Management is granted.

### 4. Negligent Misrepresentation

Plaintiff's complaint provides: "If City Environmental denies ... that it exercised the option to purchase the Real Property and agreed to purchase the Real Property, then City Environmental negligently misrepresented material facts ..." Under Ohio law:

[o]ne who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Delman v. Cleveland Heights*, 41 Ohio St.3d 1, 4, 534 N.E.2d 835, 838 (1989) citing Restatement (Second) of Torts § 552(1) (1965).

There is nothing in the record which indicates that Defendant supplied false information to the Plaintiff. The record shows that City Environmental and Spencer were actively engaged in negotiations for the sale of the property. City Environmental made several enthusiastic statements about its intentions to purchase the property and the facts indicate that City Environmental actually did intend to purchase the property at the time the statements were made. Therefore, Defendant's motion for summary judgment as to the claim of negligent misrepresentation is granted.

*5. Fraud*

In order to sustain a cause of action for fraud, Plaintiff must provide some evidence of the following: (1) a false representation; (2) knowledge of the person making the representation that it is false; (3) intent by the person making the representation to entice the other to rely on the representation; (4) justifiable reliance by the other to his detriment; and (5) an injury as a result of the reliance. *Johnson's Janitorial Service v. Alltel Corp.*, 92 Ohio App.3d 327, 329, 635 N.E.2d 60, 62 (1993). Plaintiff's complaint contends the following:

Duly authorized representatives and agents of City Environmental repeatedly represented to Plaintiff that they were going to purchase the Real Property, as a result of verbal representations, written representations, and conduct, including the shaking of hands and representation that the deal is done and they were going to purchase the real property.

Plaintiff asserts that Defendants' failure to purchase the property after making the above representations constitutes fraudulent conduct. However, Defendants correctly argue that a promise to do an act in the future cannot be the basis of an action for fraud. *Greenstreet v. Bickers*, 97 Ohio App.3d 610, 647 N.E.2d 214 (1994). Plaintiff has not provided the Court with any facts that indicate that Defendant was engaged in fraudulent conduct. At most, Defendant made several enthusiastic statements about its intention to purchase the property in the future. Such statements made during the course of negotiations do not provide a basis for a claim of fraud. Defendants' motion for summary judgment as to Count VI of Plaintiff's complaint is granted.

### *CONCLUSION*

Undoubtedly, Plaintiff feels it was exploited by Defendants' conduct and swindled into believing that the transaction was a certainty. Plaintiff views itself as victimized by Defendants' refusal to purchase the property after negotiating a near final agreement and proceeding as if the sale was inevitable without protecting itself by demanding a written sale/purchase contract or an explicit exercise of the option, in writing, before proceeding further. . However, when fire engulfed the property and circumstances eliminated Defendants' need for the facility, Defendants were not legally bound by a contract to purchase the real property. Without the existence of a legal duty, this Court cannot provide Plaintiff with the remedy it seeks.

For the foregoing reasons, Defendants' motion for partial summary judgment (Doc. No. 29) is granted in its entirety.

IT IS SO ORDERED.