**PLIKERD et al., Appellants,**

**v.**

**MONGELUZZO et al., Appellees.**

[Cite as *Plikerd v. Mongeluzzo* (1992), 73 Ohio App.3d 115.]

Court of Appeals of Ohio,
Allen County.

No. 1–90–62.

Decided Feb. 7, 1992.

116

*Ronald H. Miller,* for appellants.

*Matt C. Staley,* for appellees, M.F. Waste Ventures, Inc., John Mongeluzzo and Arnold B. Fink.

*Cory, Meredith, Witter, Roush & Cheney* and *David A. Cheney,* for appellee Curtiss Hager.

*Meister, Ayers & Meister Co., L.P.A.,* and *Andrew J. Ayers,* for appellees, Bowser–Morner, Inc., William R. Christy, Donald B. Kirkpatrick, Clayton S. Russell, Jr. and Russell R. Howard.

*Fuller & Henry, Martin D. Carrigan* and *Craig J. Van Horsten;* and *David A. Domzal,* for appellee Ohio Waste Systems, Inc.

*William J. Welch, pro se.*

THOMAS F. BRYANT, Presiding Judge.

This is an appeal by plaintiffs, Wesley F. and Dorothea Plikerd ("Plikerds") from summary judgments entered by the Court of Common Pleas of Allen County in favor of the defendants, John Mongeluzzo,[1] Arnold B. Fink, M.F. Waste Ventures, Inc., Ohio Waste Systems, Inc., Curtiss Hager, Bowser–Morner Associates, William R. Christy, Donald B. Kirkpatrick, Clayton S. Russell, Jr., Russell R. Howard, and Waste Management, Inc., dismissing plaintiffs' complaint.

On November 17, 1986, Plikerds and real estate salesman, Curtiss Hager ("Hager") in behalf of his employer, Ron Spencer Real Estate, Realtor, entered into an exclusive real estate listing agreement authorizing the broker and thus Hager, the salesman, to solicit offers to purchase and secure a purchaser for Plikerds' one-hundred-sixty-acre farmstead.

On that same day, by signing a written offer presented to them by Hager, for the recited consideration of one dollar, Plikerds granted to John Mongeluzzo ("Mongeluzzo") and Arnold B. Fink ("Fink") an exclusive, renewable option to purchase Plikerds' land within forty-three days after the date of the instrument or within the time for exercise as it might be extended by the optionees' compliance with the option terms.

The option terms provided for four monthly renewals beginning January 1, 1987, upon payment of $500 on the first of each of the four months. The option term could be extended for six additional monthly renewals by payment of $1,000 on the first day of each of the six successive months following the first $1,000 payment beginning May 1, 1987.

Another term of the option permitted Mongeluzzo and Fink to enter the optioned premises to take soil samples "for feaseability [*sic*] and engineering studies for qualification of land use."

On January 1, 1987, Mongeluzzo and Fink assigned to M.F. Waste Ventures, Inc. ("MFW") their option to purchase Plikerds' land. Mongeluzzo and Fink are the principal shareholders of MFW, an Ohio corporation.

On December 24, 1986, Plikerds, by counsel, sent notice to Mongeluzzo and Fink purporting to rescind the option agreement, claiming lack of consideration for the agreement and alleging that the option was obtained by Hager's misrepresentation of the proposed use of the land by a prospective purchaser.

---

1. Appellee's name is spelled thus throughout his brief and his pleadings in the record, in contrast to the spelling used by appellants in the caption and content of their briefs and pleadings. We use appellee's spelling of his name.

Replying by letter of counsel, Mongeluzzo and Fink denied Plikerds' right to unilaterally rescind the option and, accordingly, MFW made a timely tender of the renewal payment due January 1, 1987.

The letter by Plikerds' attorney returning the tendered renewal payment to Mongeluzzo and Fink expressly waived the option requirement for tender of further renewal payments, rejecting them in advance, but purporting to reserve to Plikerds their right to recover payments found to be due, if any, on conclusion of the matter.

Nevertheless, until June 1, 1987, MFW continued to make timely tender of the succeeding renewal payments as they came due, although all those tendered payments were returned also.

During January or February 1987, employees of Bowser–Morner Associates, purporting to act by order of MFW given under authority of its option, entered Plikerds' land and attempted to continue drilling and testing operations begun earlier in Plikerds' absence. Plikerds ordered that the testing operations be halted and the land vacated by Bowser–Morner. At some time after execution of the option agreement, monitoring wells had been installed by Bowser–Morner and later capped by Plikerds.

In the trial court, for purposes of summary judgment, it was apparently conceded by the parties that MFW failed to timely tender the renewal payment due June 1, 1987 and that Plikerds immediately sent to MFW notice reiterating their prior claim of rescission of the option with notice in the alternative that the option to purchase had lapsed as a result of the late June payment. MFW belatedly tendered the June payment, citing Plikerds' earlier waiver of the necessity for tender of option payments. Thereafter, MFW resumed its timely tender of option payments and Plikerds continued to reject and return them.

On October 27, 1987, MFW assigned its interest in the Plikerd option to Ohio Waste Systems, Inc. ("OWS"). The next day, by notice sent in compliance with the terms stated in the option document, OWS attempted to exercise its option to purchase the Plikerd farmstead. Subsequently, after Plikerds refused to accept delivery of the notice of exercise of option, OWS, by letter to Plikerds' counsel, withdrew the notice of exercise of the option.

Thereafter, Plikerds filed their complaint, followed by their first and then second amended complaint asserting numerous, varied claims against the several defendants, based on allegations of lack of consideration for the option agreement, misrepresentation by defendants inducing Plikerds to grant the option, trespass upon real estate, intentional infliction of emotional distress, and breach of contract.

The trial court granted the separate motions for summary judgment in their favor presented by the defendants and dismissed the plaintiffs' complaints entirely. The summary judgment entries recite the trial court's enumeration of facts it believed to be material and undisputed as well as the legal conclusions the court believed reasonable minds would find to be inescapable.

On appeal, appellant Plikerds assert a single assignment of error:

"The trial court committed error prejucial [*sic*] to plaintiff-appellants in granting the motions for summary judgment because there were material issues of fact to be determined from the evidence."

On appeal from a summary judgment, the reviewing court must follow the same standards the trial court is required to follow when granting summary judgment. Civ.R. 56(C) requires that the trial court in the first instance and we on appeal must determine from the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, resolving all doubts against the movant, that no genuine issue exists as to any material fact, that reasonable minds could reach no other conclusion, and that the moving party is entitled to judgment as a matter of law.

Thus in the cause before us we consider all the material properly before the court on the several motions for summary judgment, including applicable affidavits and documents properly in the record, and where permissible to do so, Plikerds' deposition testimony and other deposition testimony filed in the trial court.

The party moving for summary judgment bears the burden of showing that when considering the materials presented in support of the motion most favorably for the opposing party, no genuine issue of material fact remains for trial. Once the movant has met this burden, the burden shifts to the party opposing the motion to identify in proper form specific facts showing a genuine issue for trial.

The rule has been summarized as follows:

"The requirement that a party opposing a supported motion for summary judgment must set forth specific facts showing that there is a genuine issue for trial also applies where the plaintiff is the opponent. To oppose a defendant's motion for a summary judgment, the plaintiff must disclose in his affidavits or other documents the facts on which he intends to rely, but is not required to present a prima facie case in order to withstand the motion. There is no burden on the plaintiff to establish his entire case in a pretrial deposition. The allegations of the complaint are not sufficient to defeat a motion by the defendant for summary judgment. The plaintiff must support

the allegations with counteraffidavits or other materials. The plaintiff must present evidence in a permissible form that controverts the evidence presented by the defendant. There is, however, no affirmative duty on the plaintiff to present evidence on material issues on which the defendant has presented no evidence in support of his motion for summary judgment.

"The failure of a plaintiff to file any counteraffidavit or present any proof in response to the defendant's motion for summary judgment results in the facts as stated in the defendant's affidavit being accepted as true with the plaintiff unable to rely on the allegations of his complaint if they are inconsistent, but the failure of the plaintiff to respond to the defendant's motion is not conclusive of the right to a summary judgment, which may issue only 'if appropriate' as expressly stated in the Rule." (Footnotes omitted.) 85 Ohio Jurisprudence 3d (1988) 454–456, Summary Judgment and Judgment on the Pleadings, Section 38.

All defendants moved with supporting documents for summary judgment dismissing Plikerds' claims. Plikerds responded only to the motion filed by OWS, but in that response did not set forth as required the disputed issues of fact claimed to be material to decision of the matters of law before the court and requiring trial to resolve them. Thus, the trial court was required to enter judgments for the movants, if appropriate.

To begin our analysis, we note this is an action by Plikerds for damages predicated upon their repudiation or rescission of an option to purchase their real estate on grounds of fraud inducing them to agree to the terms of the option.

The fraud is said to consist of misrepresentations by the agent of Mongeluzzo and Fink, Curtiss Hager, concerning the prospective buyer's intended future use of the option premises. Plikerds assert that they would not have granted the option in question if they had known the use to be made of the land by the buyer and, therefore, because no meeting of the minds of the contracting parties occurred, no valid option arose.

The damages claimed are said to have resulted from appellees' trespass to the real estate subject to the option. Plikerds claim physical injury to the land resulting from unauthorized entry upon the land and, additionally or alternatively, injury resulting from appellees' use of the land, prior to rescission, for purposes not authorized by the terms of the option. As additional injury, Plikerds claim to have suffered emotional distress intentionally inflicted by appellees in the process of trespass and otherwise in the course of the parties' dealings.

Plikerds seek recovery of damages from Mongeluzzo, Fink, MFW and OWS for claimed breach of contract to purchase the optioned real estate, alleging

damages measured by the difference between the option price and the fair market value of the property.

Finally, Plikerds raise an alternative argument that they are due the amount of money representing the option payments tendered in the months before June 1, 1987. This claim is based on the trial court's finding that a valid contract existed between Plikerds and MFW prior to MFW's loss of option right in consequence of late tender of the option payment due June 1. The trial court did not enter judgment for appellants for the option payments tendered but rejected during the period in which the option was found to have been in force.

In order to determine whether or not it was appropriate for the trial court to dismiss Plikerds' complaint in all respects, we begin by identifying the elements Plikerds must establish by the evidence in order to recover upon their several claims.

Plikerds' claims of damage to realty by naked trespass and by intentional infliction of emotional distress hinge principally upon the sellers' claim of right to repudiate the option given by them. On the other hand, Plikerds' claims of damages from breach of contract to purchase and for unpaid option payments depend upon the existence of enforceable contracts.

█ The contract in suit is an option to purchase real estate. An option to purchase or sell real estate is not a contract to purchase or sell real estate, because the optionee has the right to exercise, that is, to accept or reject the offer made, as the case may be, according to the terms of the agreement and is not bound by it. An option is defined and its characteristics explained in 17 Ohio Jurisprudence 3d (1980) 453–455, Contracts, Section 22:

"A proposal made to be accepted within a specified time constitutes what is sometimes referred to as a continuing offer; and a continuing offer upon a sufficient consideration is usually termed an 'option.' The Supreme Court has said that options are 'merely contracts by which one party in consideration of the payment of a certain sum to the other party acquires the privilege of buying from or otherwise acquiring or selling to such other party, an interest in specified property at a fixed price within a stated time.' There are two elements to an option contract: (1) the offer to buy, sell, or perform some other act which does not become a contract until accepted; and (2) the binding agreement to leave the offer open for the specified time. These elements are wholly independent.

"An option to be effective and not revocable must be based upon a consideration. The consideration for the option contract is something other and independent of the consideration that will pass between the parties in the

event that the option is exercised. If the party to whom an option has been given, even without consideration, accepts it before it has been withdrawn, a valid contract results, notwithstanding the lack of consideration.

"An option is a unilateral contract, since it binds one side without binding the other; and the binding effect of an option given for a consideration does not depend on mutuality. So it prevents the party who signs it from disposing of the property under consideration until its expiration. But the party having the option is of course not bound to exercise it; he can withdraw from it at any time prior to the exercise thereof."

The terms of the option before us have arisen by Plikerds' acceptance of the terms of an offer made them by Mongeluzzo and Fink. By those terms, Plikerds bound themselves to accept, if made within specified time limits and in the manner provided, an offer to purchase the property to which the agreement pertains for the price stated and upon the terms of sale stated. By the option terms Plikerds granted to the optionee the right, for specified purposes, to enter the land subject to the option during the option period. The language of the option does not refer in any way to the use to be made of the property if purchased by the optionee and reserves no right of the seller to restrict that use upon sale. On its face, the written option terms accepted by Plikerds disclose no reservation excusing their performance, nor does there appear any ambiguity from which might be interpreted the sellers' purpose to restrict future use of the land by the optionee or successors.

Thus, to avoid the option, Plikerds must show misrepresentation by Mongeluzzo and Fink inducing them to accept option terms they would not have accepted but for the misrepresentation.

■ The trial court, assuming Hager to be the agent of Mongeluzzo and Fink as alleged in the complaint, found no misrepresentation by Hager to be attributed to his optionee principals and thus no right of Plikerds to rescind the option.

We find nothing in the record before the trial court from which the agency of Hager for Mongeluzzo and Fink might be inferred. Indeed, we hold that reasonable minds considering the matter before the trial court on motion for summary judgment can reach only the conclusion that Hager was acting in the transaction as agent of Plikerds, not of Mongeluzzo and Fink. Contradicting the unsupported allegations of Plikerds' complaint and deposition testimony is the written exclusive agency agreement between Plikerds and Hager's employer for solicitation of offers to purchase Plikerds' real property. Hager does not claim to be the agent of Mongeluzzo and Fink and those alleged principals in their deposition testimony deny that Hager approached Plikerds as their representative for any purpose. It is undisputed by any deponent

claiming knowledge of the facts, as opposed to plaintiffs' unsupported accusations, that Hager first contacted Fink to learn if he wished to buy the Plikerd property, that price was not discussed between them until after Hager obtained the Plikerd listing, and that Hager never discussed the use of the land with Mongeluzzo or Fink when soliciting their offer of option to purchase the land. There is no evidence in the record of any fact, genuinely disputed or not, which might permit attribution of any act of Hager's to the optionee.

Between Mongeluzzo and Fink on the one hand, and Plikerds on the other, therefore, as this court stated in *Smith v. Findlay College* (Oct. 22, 1984), Hancock App. No. 5–83–35, unreported, at 3, 1984 WL 8095:

"As stated in 43 O.Jur.3d, 393, Evidence and Witnesses, Sec. 541, it 'is a general principle that when parties have deliberately put their engagement into writing in such terms as import a legal obligation without any uncertainty as to the object or extent of such engagement, it is *conclusively* presumed that the entire engagement of the parties, and the extent and manner of their undertaking, have been reduced to writing' * * *." (Emphasis added.)

Moreover, as noted by the Supreme Court in *Dice v. Akron, Canton & Youngstown RR. Co.* (1951), 155 Ohio St. 185, 191, 44 O.O. 162, 164, 98 N.E.2d 301, 304, reversed on other grounds (1952), 342 U.S. 359, 72 S.Ct. 312, 96 L.Ed. 398, 47 O.O. 53:

"A person of ordinary mind cannot say that he was misled into signing a paper which was different from what he intended to sign when he could have known the truth by merely looking when he signed. * * * If this were permitted, contracts would not be worth the paper on which they are written. If a person can read and is not prevented from reading what he signs, he alone is responsible for his omission to read what he signs." (Citation omitted.)

■ The option document signed by Plikerds recites that it is "in consideration of one dollars ($1.00), the receipt of which is hereby acknowledged." An ensuing term provides for additional monthly payments to begin and continue for periods to extend beyond the initial forty-three-day option period. In 80 Ohio Jurisprudence 3d (1988) 33, Real Property Sales and Exchanges, Section 15:

"An option must be supported by consideration. A revocation by the offeror is precluded where consideration for the option is shown to exist. Where the optionors acknowledge the receipt and sufficiency of $1 and other valuable considerations mentioned in the option to purchase, they may not thereafter question the sufficiency of the consideration."

■ Proof of the allegations of trespass by excessive use of the right of entry granted requires consideration of the evidentiary material presented to the trial court in light of language of the option granting to the optionee the right to enter and defining the purpose for entry on the option premises.

The option in question states in pertinent part:

"In regards to the option to purchase, the seller also grants unto the purchaser permission to take soil samples for feaseability [*sic*] and engineering studies for qualification of land use. In granting ingress onto the property, seller accepts no responsibility for liability for purchaser or anyone employed in their behalf to conduct such testing."

The option document is silent about the manner in which soil samples may be taken and engineering studies performed on the option land. The language of the instrument does not explain for what use the soil is to be feasible or for what use the land is to be found qualified. The breadth of the grant suggests the only reasonable interpretation of such unlimited terms to be an intent that the optionee perform the tests necessary to ensure the suitability of the land for exercise of the option to purchase.

The unrebutted affidavit of Bruce Kirkpatrick, one of the defendants alleged to have trespassed on Plikerds' land, confirms that the affiant and the other defendant employees of defendant Bowser–Morner Associates entered pursuant to the option to drill in the land for "test borings" and to establish "monitoring wells to evaluate ground water and other sub-soil conditions." It is affirmed that the work on Plikerds' land "was done in a usual and reasonable manner." While denying that any damage occurred, the affiant states that damage to the land, if any, was that ordinarily resulting from the work authorized.

■ Plikerds' second amended complaint alleges Mongeluzzo's and Fink's intentional infliction of serious emotional distress upon Plikerds by Mongeluzzo's telling them "they would lose the farm in threatened litigation, and end up with neither the farm nor the option price * * * so they would withdraw cancellation of the option." It is pleaded that as a result Plikerds "suffered great distress, being unable to eat, sleep, attend church, and otherwise go about their normal activities."

In *Schultz v. Barberton Glass Co.* (1983), 4 Ohio St.3d 131, 4 OBR 376, 447 N.E.2d 109, syllabus, the Supreme Court held that "[a] cause of action may be stated for the negligent infliction of serious emotional distress without a contemporaneous physical injury," and in *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, 6 OBR 421, 453 N.E.2d 666, syllabus, the Supreme Court recognized that "one who by extreme and outrageous conduct intentionally or

recklessly causes serious emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." Thus, the emotional distress claimed to have been inflicted must be "serious." "Serious emotional distress" is defined by the Supreme Court in *Paugh v. Hanks* (1983), 6 Ohio St.3d 72, 6 OBR 114, 451 N.E.2d 759, paragraph three of the syllabus as:

"Serious emotional distress describes emotional injury which is both severe and debilitating. Thus, serious emotional distress may be found where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case."

The deposition testimony of Plikerds discloses that neither sought or received any medical, psychiatric, or psychological treatment, missed any work or incurred any expense for treatment of emotional distress resulting from the incidents in suit. The statements allegedly made by Mongeluzzo in consequence of appellants' attempted cancellation of option do not rise to the level of extreme and outrageous conduct as defined in *Yeager v. Local Union 20, supra,* 6 Ohio St.3d at 374–375, 6 OBR at 426, 453 N.E.2d at 671–672:

"With respect to the requirement that the conduct alleged be 'extreme and outrageous,' we find comment *d* to Section 46 of the Restatement, *supra,* at 73, to be instructive in describing this standard:

" ' * * * It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, or so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous."

" 'The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's feelings are hurt. There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam. See

Magruder, Mental and Emotional Disturbance in the Law of Torts, [49] Harvard Law Review 1033, 1053 (1936). * * *' "

Applying the foregoing standard, we find in the record no evidence of fact before the trial court, disputed or not, from which the intentional infliction upon Plikerds of serious emotional distress reasonably may be inferred.

Applying the applicable principles of law and procedure as we have identified and discussed them, we agree with the trial court that considering most favorably for Plikerds, against whom the motions are made, the evidence properly before the court on the several motions for summary judgment of appellees, reasonable minds can come to but one conclusion and that conclusion is adverse to Plikerds with respect to the validity of the option signed by them, with respect to the breadth of the right of entry for testing granted by the option, and with respect to the want of evidence to prove a claim for infliction of serious emotional distress, for trespass to real estate, for damages for trespass by wrongful use of their real estate for purpose not granted by option, or for breach of contract to purchase real estate. It was therefore appropriate for the trial court to enter its summary judgments for the several movants on these issues.

As noted, Plikerds opposed only the motion for summary judgment filed by OWS.

Plikerds' claim for damages from OWS is said to follow from its acquisition of the Mongeluzzo and Fink option from MFW, and is stated to be for lost profit measured by the difference between the market value of Plikerds' farm and the option price. Plikerds do not seek specific performance of a contract to purchase, have not tendered a deed, and have denied not only the validity and enforceability of the option but have denied their willingness and intention to sell their realty pursuant to the option. They have not received and accepted the timely proffered exercise of option by OWS, MFW, Mongeluzzo and Fink, but expressly rejected that proffer by letter of their counsel. OWS's attempted exercise of option, joined also by Mongeluzzo and Fink and MFW, was withdrawn after expiration of the option term with no acceptance by Plikerds of the attempted delivery to them of the notice of exercise of option required by the option terms for formation of a land purchase contract. Because an option to purchase real estate does not require the buyer to buy or the seller to sell the subject realty until the option has been exercised by the option holder, no purchase contract enforceable by the seller was ever created.

Thus, on the motion for summary judgment of OWS, no material fact remaining in dispute and it appearing that OWS was entitled to judgment, the

circumstances were appropriate for the trial court to enter summary judgment for OWS dismissing Plikerds' claim against it.

For like reasons, as well as for the further reason that the assignment of the interests of all in the Plikerd option to OWS was not in dispute, it was appropriate to enter, on the motions of Mongeluzzo, Fink and MFW also, summary judgment on the issue of breach of contract to purchase real estate.

Plikerds filed in the trial court no memorandum or other matter in opposition to the motion for summary judgment filed by Bowser–Morner Associates, Inc., William R. Christy, Donald B. Kirkpatrick, Clayton S. Russell, Jr. and Russell R. Howard (hereinafter collectively called "Drillers").

Plikerds' claim against Drillers, set forth in the first amended complaint by which they were made parties, is for trespass to real estate alleged to have resulted from Drillers' exceeding the scope of permission granted to Mongeluzzo and Fink by the option upon the authority of which Drillers entered and drilled certain wells on Plikerds' farm. Plikerds seek money damages for the trespass alleged.

The matter before the trial court to be properly considered by it in ruling upon the motion for summary judgment filed by Drillers was composed of the pleadings, the option document by which Drillers claimed right of entry and to drill wells, and the affidavit of one of the defendant Drillers, Bruce Kirkpatrick. The Kirkpatrick affidavit attests that the affiant had personal knowledge that Drillers entered Plikerds' land in reliance on the permission contained in the option document attached, that the wells drilled on Plikerds' land were for the purpose of taking soil samples and making the feasibility studies permitted by the option terms, that the wells drilled were an appropriate means of obtaining the necessary samples for study, that no damage was done by Drillers beyond that necessary to accomplish the purpose for entry and drilling, and that Drillers, at the time of their entry and drilling, were unaware of any dispute about their right to do so.

Drillers correctly point out that the deposition portions appended to appellants' brief on appeal and here relied on by Plikerds to establish the existence of disputed fact before the trial court, if they are relevant, were not properly before the trial court on Drillers' motion, for the depositions were taken before Drillers were made party to this suit. Neither Drillers nor their counsel were served with notice of the taking of depositions and such proceedings were not attended by them. Therefore, such deposition testimony may not be used against Drillers in this proceeding in the absence of other qualification by Plikerds asserted in response to the summary judgment motion below and presenting the opportunity and necessity to Drillers' in the trial court for objection to use of those depositions. Of course, matter not in

the trial court record may not be included in the record on appeal by attaching it to an appellate brief, and accordingly we do not consider such appended matter for purposes of Drillers' motion. See Civ.R. 32(A), Civ.R. 30(B)(2); see, also, *Phung v. Waste Mgt., Inc.* (1986), 23 Ohio St.3d 100, 23 OBR 260, 491 N.E.2d 1114.

As noted above, the failure of a party confronted by a motion for summary judgment supported by affidavit to file counteraffidavits or other proof as necessary results in the facts appropriately stated in the supporting affidavit being taken as true for purposes of the motion, and the party opposing the motion may not then rely on the contrary allegations of his pleadings. See *Stemen v. Shibley* (1982), 11 Ohio App.3d 263, 11 OBR 441, 465 N.E.2d 460.

Everything before the trial court for consideration upon Drillers' motion, including Plikerds' second amended complaint, suggests the validity of the option document underlying Drillers' claim of right to enter and drill. Only the affidavit of Kirkpatrick presents evidence on the issue of trespass, negating the claim of trespass by use exceeding the privilege granted by that option or otherwise. Thus, no fact material to decision of the claim against Drillers is disputed.

For the same reasons, Plikerds' claims for damages to the real estate claimed to have resulted from trespass also were properly to be dismissed.

In the circumstances of the matter before the trial court upon Drillers' motion, it was appropriate for that court to enter its summary judgment dismissing Plikerds' claim against Drillers.

Plikerds' second amended complaint alleges generally against the named defendants claims for trespass, trespass by excessive use of a grant of privilege to enter land, intentional infliction of emotional distress, and breach of contract to purchase realty. Appellee, Waste Management, Inc. ("WMI"), first named in the second amended complaint, filed in response its answer followed by its motion for summary judgment, its supporting brief and its notice of filing of supporting affidavit, addressing the claims of the second amended complaint as applied to WMI. Plikerds did not oppose WMI's motion. The trial court granted summary judgment for WMI based on the undisputed facts presented by evidence showing no contract existing between Plikerds and WMI that might have been breached, no incident of trespass by entry upon Plikerds' land by WMI employees or agents, no occasion of any use of Plikerds' land by WMI, and no incident of infliction of emotional distress or other contact with Plikerds by WMI employees or agents. The circumstances confronting the trial court were appropriate for the entry of summary judgment dismissing Plikerds' claims against WMI.

Plikerds have asserted no claim against Curtiss Hager, individually, for misrepresentation, for breach of agency contract or otherwise. No evidence before the trial court on motion discloses that any act of Hager's was a trespass to realty of any sort, or that he was a principal party to the Plikerd option, or that he did any act or made any statement inflicting serious emotional distress upon Plikerds. Hager was not a signator of the attempted exercise of the Plikerd option by others. In the circumstances, it was appropriate to enter summary judgment dismissing Plikerds' complaint as to Hager.

Plikerds' remaining claims against the remaining defendants-appellees, Mongeluzzo, Fink and MFW, hinge upon establishment of the fact of material misrepresentations by their agent, Hager, inducing Plikerds to grant the option in suit and permitting the latter to rescind that option.

Nothing in the record properly to be considered on motion for summary judgment permits the conclusion that Hager was the agent of Mongeluzzo and Fink in procurement of the option to purchase Plikerds' real estate. To the contrary, the admissible evidence before the court permits only the conclusion that Hager was the agent of Plikerds for purposes of obtaining a buyer for their land at a suitable price, notwithstanding that Hager may have had a prospective buyer in mind before securing the agency agreement binding his principals to pay him a commission for bringing buyer and seller together. Nothing contained in the listing agreement, entitled "Exclusive Right To Sell Or Exchange," purports to prohibit sale for any particular purpose. Nothing before the trial court demonstrates any knowledge by Mongeluzzo or Fink, prior to taking the option, of Plikerds' intention, as a condition of sale, to limit the use to be made of the property by the buyer. The option document signed by Plikerds contains no such reservation, term, or condition. Thus any misrepresentation by Hager inducing Plikerds to grant to Mongeluzzo and Fink an option to purchase the Plikerd farm may not be imputed to the prospective purchasers. Plikerds seek no remedy from Hager for agent's fraud; therefore, in the circumstances described, a dispute concerning the fact of representations made by Hager to Plikerds, his principals, to obtain their agreement to sell to others, is not material to the matter before the court concerning Mongeluzzo, Fink and MFW.

This is not an action for rescission of a contract, for the rescission here was by unilateral act of the sellers before exercise of the option by the optionee.

We have determined previously that the trial court properly dismissed Plikerds' claims of intentional infliction of serious emotional distress, trespass and breach of contract to purchase. Accordingly, the trial court correctly

granted summary judgment for movants Mongeluzzo, Fink and MFW, dismissing in their entirety appellants' claims against them.

 As a final alternative, Plikerds claim the right to recover the monthly option payments they previously refused to accept in consequence of their announced rescission of the option.

Plikerds, acting by their counsel, upon attempted cancellation of the option they had granted and announcement of their anticipatory conditional rejection of present and future option payments, also expressly waived the necessity for tender of the option payments yet to be made by the optionee. Holding to their claim of cancellation of option, Plikerds returned the payments tendered by the optionee in every month for the entire term of the option and all allowable extensions.

Plikerds avoided and rejected during the option term notice of the optionee's exercise of the option, which exercise might have ripened into a contract of purchase. Their repudiation of the option thereby became complete and the optionee's purpose in taking the option was frustrated. The option payments to be made were consideration for the Plikerds' agreement to sell for the price agreed upon the optionee's timely decision to exercise the option, that is, to offer to purchase the option property for the option terms. Having breached their agreement to sell for the option price and terms upon proper exercise of the option, Plikerds have not earned the consideration promised by the optionee in return. Plikerds, having repudiated their promise, no payment for that promise is due them. The trial court was correct when ordering no payment of the option installments rejected by appellants.

For the reasons stated, the summary judgments of the Court of Common Pleas of Allen County are affirmed.

*Judgments affirmed.*

HADLEY and EVANS, JJ., concur.