[Cite as *Quest Wellness Ohio, L.L.C. v. Samuels*, 2023-Ohio-4450.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

QUEST WELLNESS OHIO, LLC,

Plaintiff-Appellee,

v.

YOLANTA K. SAMUELS,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 23 MA 0013

---

Civil Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 2021 CV 1346

**BEFORE:**
Mark A. Hanni, Carol Ann Robb, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Reversed and Remanded.

---

*Atty. Steven E. Miller* and *Atty. Marissa R. Borschke*, Crabbe, Brown & James, LLP, for Plaintiff-Appellee and

*Atty. Timothy J. Cunning*, Scullin & Cunning, LLC, for Defendant-Appellant.

Dated: December 7, 2023

**HANNI, J.**

**{¶1}** Defendant-Appellant Yolanta Samuels (Appellant) appeals the January 20, 2023 judgment of the Mahoning County Court of Common Pleas Court adopting a magistrate's decision. The court found that Plaintiff-Appellee, Quest Wellness Ohio, LLC (Appellee), substantially complied with a notice of extension provision in a commercial lease between Appellee and Appellant. The court declared that the lease was in full force and effect in its second renewal option period and granted Appellee a permanent injunction restraining Appellant from interfering with Appellee's tenancy rights.

**{¶2}** For the following reasons, we find that the trial court lacked jurisdiction to vacate its January 20, 2023 judgment and issue its March 22, 2023 judgment entry. We further find that the trial court committed plain error by accepting the parties' stipulations as to the applicable law and applying substantial compliance to an unambiguous commercial contract. Accordingly, Appellant's first assignment of error has merit and renders her second assignment of error moot.

**{¶3}** On November 17, 2017, Appellee and Appellant entered into an agreement for Appellee to lease Appellant's property and building to operate a medical marijuana dispensary. The initial lease term was for three months while Appellee awaited State of Ohio approval of its license to operate the dispensary.

**{¶4}** The lease agreement provided for three consecutive extension periods, each lasting for three years. Section 2.2 of the lease provides in relevant part that:

> Provided that no default by Tenant exists under this Lease beyond applicable notice and cure periods at the time the applicable option to extend which is described below is exercised, Tenant shall have the right to extend the Initial Term for three (3) consecutive renewal periods of three (3) years each (each an "Extension Option"), each commencing on day after the expiration of the prior term, upon the same terms and conditions as are contained in this Lease. The Extension Options shall be exercised, if at all, by written notice to Landlord given not later than the last day of the Initial Term, with respect to the first Extension Option, and not later than thirty (30)

days before the end of the preceding Extension Option period, for the second and third Extension Options.

{¶5} Section 3.1 of the lease sets out the minimum rents for each extension period, starting with a minimum rent of $3,000 per month for the initial term and the first extension period, which constituted years 1-3 of the lease. Section 3.1 sets the minimum monthly rent for the second option extension in years 4-6 at $3,250. The minimum monthly rent for the third option extension in years 7-9 was $3,450.

{¶6} Section 10.1 of the lease sets forth when the landlord may terminate the lease upon default by the tenant. It provides that the landlord may terminate the lease if the tenant failed to pay a rent installment within 10 days of receiving written notice of late rent payment. The landlord may also terminate the lease if the tenant fails to perform under any other covenants in the lease within 30 days of receiving written notice by the landlord. Section 17.9 of the lease stated that, "[t]ime shall be of the essence in the performance of every term, covenant and condition of this Lease."

{¶7} The parties extended the initial lease term to June 30, 2018 by amendment. The amendment provided that the first extension term would begin immediately after the initial term ended. Thus, the initial term ended on June 30, 2018, and the first three-year extension term began on July 1, 2018 and ended on June 30, 2021. After the State approved its dispensary application, Appellee began renovating the building to comply with Ohio's strict requirements to operate a dispensary.

{¶8} On June 5, 2018, Appellee's general manager, Herb Washington, sent a "Notice of Extension of Lease" to Appellant. The notice stated that Appellee was exercising its first extension option, beginning July 1, 2018 and ending June 30, 2021, as per the lease and amendment.

{¶9} Disagreements arose after water began leaking into the building. Appellee believed that the roof of the building was deteriorating and causing water to leak into the public and computer security areas. Appellant believed that Appellee failed to change the filters in the HVAC system located on top of the roof which caused the leaking or that Appellee's roofing contractor caused the leakage by making core cuts into the roof of the building after inspecting the roof to add a canopy.

**{¶10}** In any event, on April 9, 2021, Appellant emailed Appellee's counsel, advising him that roof restoration was forthcoming and the restored roof would be warranted against leaks for 18 years. On April 14, 2021, Appellant again emailed Appellee's counsel, advising him that Appellee had failed to make rental payments from February through April 2021 and failed to pay the first half of the property taxes. Appellant stated that her email was notice of Appellee's default and she advised that if Appellee did not pay the rental payments, she would terminate the lease.

**{¶11}** On April 15, 2021, Appellee's counsel emailed Appellant. He inquired into the roof restoration and requested a copy of the roof contract. He advised that Appellee would pay all rent charges, and he requested that Appellant sign an estoppel certificate in accordance with section 17.10 of the lease stating that the lease is in full force and effect with no defaults. Appellee's counsel further stated in the email that "[t]he lease is also in the Second Option renewal Period effective March 1, 2021."

**{¶12}** Per joint trial stipulations, Appellee admitted that it was mistaken as to the effective date of the second option extension period.

**{¶13}** On April 16, 2021, Appellant emailed Appellee's counsel, repeating that Appellee was in default of rent payments. She further stated that:

> In this situation Tenant is still in Default and I will exercise my right to terminate the Lease. Unfortunately, the Lease is also not in the Second renewal period effective March 1st 2021.
>
> The First Option Extension (year 1-3) period started July 1.2018 and is ending on June 30.2021. The Extension Option shall be exercised if at all, by written notice to Landlord given not later than of thirty (30) days before the end of the proceeding Extension Option Period, for the Second Extension Options, Section 2.2 provided that no default by Tenant exists under this Lease.
>
> I hope, [sic] we can resolve this matter without conflict and also I am looking forward to hearing from you.

{¶14} On May 3, 2021, Appellant emailed Appellee's counsel, indicating that she received a past due rent check from Appellee for April and May 2021, but it was $36 short. She stated that she would not proceed with eviction if Appellee immediately paid the $36. She advised that if she did not receive the $36, she would proceed with an eviction action. She cautioned that if any future payments were not made when due, she would immediately start eviction proceedings.

{¶15} On June 2, 2021, Appellant notified Appellee's counsel that Appellee failed to provide proper notice of its intent to extend the lease for the second option extension period and the lease would expire on June 30, 2021. She ordered Appellee to vacate the property by June 30, 2021.

{¶16} On June 14, 2021, Appellee's counsel emailed Appellant to follow up on a phone call they apparently had that day. Appellee's counsel confirmed Appellant's position that the lease terminated because Appellee did not give her a notice of intent to extend. Counsel stated that Appellee believed that it had already extended the lease in April and this was sufficient notice. Counsel noted that while Appellant was going to send a new lease, he offered a compromise so that no disagreement would arise over the rent amount. He suggested that Appellee pre-pay Appellant three months of rent in the amount of $3,250 per month and start the extension date on June 1, 2021.

{¶17} Per joint trial stipulations, the parties agreed that the June 14, 2021 email accurately expressed Appellee's intention to extend the lease agreement for the second option period. The parties also agreed that Appellant refused to accept the June 14, 2021 email as proper notice of the intent to extend the lease agreement. The parties further agreed that on June 17, 2021, Appellant offered to enter into a new lease with Appellee for $10,000 per month.

{¶18} On July 22, 2021, Appellant began eviction proceedings by sending Appellee a Notice to Leave Premises.

{¶19} On July 30, 2021, Appellee filed a verified complaint for a declaratory judgment, breach of the covenant of quiet enjoyment, injunctive relief, and specific performance. Appellee acknowledged that the second option extension period did not actually begin until June 1, 2021. However, Appellee alleged that, "the notice from Quest was sufficient to provide written notice of Quest's intent to renew the lease for the Second

Option Renewal Period." (Comp. at 5). Appellee also noted that Appellant accepted its June 2021 rent payment.

{¶20} Appellee averred that Appellant notified Appellee's representative that Appellee failed to give the required 30-day written notice to extend and it therefore had to vacate the premises by June 30, 2021. Appellee alleged that Appellant threatened an eviction action and offered a new lease agreement increasing rent to $10,000 per month. Appellee stated that when it refused the offer, Appellant threatened to call the Ohio Board of Pharmacy and get its medical marijuana license revoked.

{¶21} Appellee sought a declaratory judgment that the lease was in full force and effect in its second option extension period. Appellee alleged that Appellant breached the covenant of quiet enjoyment by refusing to repair the roof and threatening eviction unless it vacated the premises by July 31, 2021. Appellee also sought an injunction against vacating the premises and requested specific performance of the lease.

{¶22} On the same date of the filing of its complaint, Appellee also filed a motion for a temporary restraining order and preliminary injunction. On August 3, 2021, the parties stipulated to a temporary restraining order.

{¶23} On February 2, 2022, the magistrate held an injunction hearing, where testimony was provided by Mr. Washington, Appellee's president, and Appellant. In addition to written factual stipulations, the parties stipulated to the following:

> In light of the stipulations of fact, did the notifications which Quest provided to Mrs. Samuels during the period from April 15, 2021 through June 30 2021 amount to "substantial compliance" with the Lease's notification requirements for exercising the option to extend the lease into the next Renewal Period, July 1, 2021 to June 30, 2024? If so, should the injunction be granted?
>
> If the court finds that the notifications referenced in question No. 1 did not amount to "substantial compliance" with the lease's notification requirements, should the injunction nevertheless be granted or denied based upon equitable principles?

{¶24} The stipulations also noted that:

Case No. 23 MA 0013

The parties stipulate that the general rules governing this controversy can be stated as follows: The courts generally do not require a "hypertechnical" compliance with notice and options provisions of a lease, and will allow the option to be exercised if there has been "substantial compliance" with the notice provisions. *See, e.g., McGowan v. DM Group IX* 7 Ohio App.3d 349 (10th Dist. 1982) and *Claypool v. Dews*, 2018-Ohio-5401 (7th Dist.). Additionally, if notification did not strictly conform with the lease, equitable relief may still be granted where such failure (1) results from accident, fraud, surprise, or honest mistake, and (2) has not prejudiced the lessor. *Ward v. Washington Distributors, Inc.* (1980), 67 Ohio App.2d 49, 53, 425 N.E.2d 420. The landlord must also have changed position in reliance upon the late notice. *Id.*

**{¶25}** On March 9, 2022, the magistrate granted Appellee's motion for a preliminary injunction and denied Appellant's request to find that the lease terminated on June 30, 2021. The magistrate found that Appellee met the elements for granting a preliminary injunction. He found that Appellee was likely to succeed on the merits of its claims because it substantially complied with the notice of extension provision in the lease with the April 15, 2021 email. He held that the context behind the email showed that Appellee intended to continue the tenancy.

**{¶26}** The magistrate further noted that the parties had negotiated over the roof, made progress for global resolution of their issues, and Appellee offered to repair the roof at its own expense, which would have far exceeded the rent it owed. The magistrate also found that Appellant's notice to Appellee about the 18-year restored roof warranty suggested that Appellant was performing this action for Appellee's future benefit. The magistrate further found that the June 14, 2021 email from Appellee's counsel to Appellant expressed Appellee's intent to extend the lease.

**{¶27}** The magistrate further found that the injunction was narrowly drawn because it only required Appellant to continue the lease and maintain the status quo. He also reasoned that because Appellant entered into no lease agreements with others for the property, no third parties would be harmed by the injunction.

**{¶28}** On July 7, 2022, Appellant, pro se, filed objections to the magistrate's decision. She asserted that no factual basis existed for many facts found by the magistrate, including the cost of renovations to the building, the process of altering the building, and a finding that the roof of the building contained leaks that were not caused by Appellee's contractor. Appellant also asserted that the magistrate erred by finding that Appellee withheld rent payments because of roof issues, since Appellee was often delinquent in rent and other payments. Appellant stated that Appellee failed to comply with the notice provision of the lease and repeatedly breached the lease by making building renovations without permission, failing to timely provide proof of insurance, making late rent payments, and delinquently reimbursing her for taxes and insurance.

**{¶29}** On August 15, 2022, the trial court adopted the magistrate's decision. The court stated that it had conducted an independent review of the evidence. It found that Appellee was likely to succeed on the merits of its claims because it substantially complied with the lease's notice provision through the April 15, 2021 email. The court held that the only reasonable interpretation of that email was that Appellee intended to continue its tenancy into the next term.

**{¶30}** The court further held that the parties continued to negotiate over the roof, made progress in resolving their issues, and Appellee offered to repair the roof at its own cost, and these facts were against Appellee's interest if it did not intend to extend the lease. The court cited Appellant's email to Appellee about the roof restoration and the 18-year warranty against leaks, which it held showed that Appellant was restoring the roof for Appellee to continue as a tenant. The court also held that the June 15, 2021 email by Appellee's counsel to Appellant made it clear that Appellee's intent in the April 15, 2021 email was to extend the lease.

**{¶31}** The court further held that Appellee's injunction was narrowly drawn because it only required Appellant to continue the lease and maintain the status quo. The court noted that Appellant had not entered into a lease agreement with anyone else for the property and therefore no third parties would be harmed by the injunction.

**{¶32}** The court granted Appellee's preliminary injunction motion and denied Appellant's request to find that the lease terminated as of June 30, 2021. The court ordered the case to be scheduled for a final pretrial and trial on the remaining issues.

{¶33} On November 8, 2022, Appellee filed a motion to consolidate the preliminary injunction hearing with the trial on the merits. Appellee also filed a notice dismissing its claims for breach of the covenant of quiet enjoyment and specific performance.

{¶34} On December 5, 2022, Appellant, pro se, filed a motion alleging that her attorney did not represent her correctly and she had a significant amount of evidence to present. She alleged that Appellee breached the lease agreement in numerous ways and thus could not prevail on its claims. She also filed a motion for recusal of the magistrate and trial court judge because she could no longer trust them.

{¶35} On December 13, 2022, the magistrate issued a decision granting Appellee's motion to consolidate the preliminary injunction hearing with the trial on the merits. He found that all relevant evidence was presented at the preliminary injunction hearing to determine whether Appellee substantially complied with the notice of extension provision of the lease. The magistrate referred to the testimony of Mr. Washington and Appellant. He further stated that he had reviewed the lease agreement and the emails between the parties.

{¶36} The magistrate noted that Appellant intended to present evidence of new claims two days before the hearing, but he struck it from the record. He explained that Appellant had only one counterclaim and did not amend her counterclaim to include new claims, so the new claims and related evidence could not be presented.

{¶37} The magistrate granted Appellee's motion to consolidate and declared the lease between the parties in full force and effect in its second option extension period. The magistrate awarded judgment in favor of Appellee by granting the permanent injunction restraining Appellant from interfering with its tenancy rights. The magistrate's decision included a notice informing the parties that the parties had 14 days within which to file written objections to the magistrate's decision.

{¶38} On December 15, 2022, the trial court judge denied Appellant's motion to recuse.

{¶39} On December 22, 2022, Appellant filed a motion to extend her time for filing objections. Appellee opposed Appellant's motion.

**{¶40}** On January 5, 2023, the court issued an order allowing Appellant to file objections to the magistrate decision by January 17, 2023. Appellant filed objections on January 18, 2023.

**{¶41}** On January 20, 2023, the trial court adopted the magistrate's decision. The court granted Appellee's motion to consolidate the preliminary injunction hearing with the trial on the merits. The court declared that the lease between the parties was in full force and effect in its second option extension period and awarded Appellee a permanent injunction restricting Appellant from interfering with its tenancy rights.

**{¶42}** On January 31, 2023, Appellant, through counsel, filed a notice of appeal of the trial court's January 20, 2023 judgment.

**{¶43}** On February 1, 2023, the trial court vacated its January 20, 2023 judgment, finding that it had mistakenly entered judgment without considering Appellant's untimely filed objections. The court found that the interest of justice required vacation of its prior judgment, especially due to Appellant's pro se status. The court ordered that a non-oral hearing be scheduled on the objections.

**{¶44}** On March 22, 2023, the trial court issued a judgment entry, again adopting the magistrate's decision, but noting that Appellant wanted to present evidence of new claims two days before the hearing and filed exhibits on January 17, 2023 and objections on January 18, 2023. The court struck the new claims as untimely and issued nearly the same judgment as that issued on January 20, 2023.

JURISDICTIONAL ISSUE

**{¶45}** Although neither party raises the issue, we find that the trial court lacked jurisdiction to vacate its January 20, 2023 judgment and issue its March 22, 2023 judgment. Appellant filed her notice of appeal on January 31, 2023. The trial court vacated its January 20, 2023 judgment on February 1, 2023 and issued a subsequent judgment on March 22, 2023.

**{¶46}** The filing of a notice of appeal divests the trial court's jurisdiction over the subject matter of the appeal. *State ex rel. Electronic Classroom of Tomorrow v. Cuyahoga Cty. Court of Common Pleas,* 129 Ohio St.3d 30, 2011-Ohio-626, 950 N.E.2d 149, ¶ 13. "It is well settled that 'once an appeal is perfected, the trial court is divested of jurisdiction over matters that are inconsistent with the reviewing court's jurisdiction to

Case No. 23 MA 0013

reverse, modify, or affirm the judgment.'" *State ex rel. Allenbaugh v. Sezon*, 171 Ohio St.3d 573, 2023-Ohio-1754, 218 N.E.3d 935, ¶ 16, quoting *State ex rel. Electronic Classroom of Tomorrow v. Cuyahoga Cty. Court of Common Pleas*, 129 Ohio St.3d 30, 2011-Ohio-626, 950 N.E.2d 149, ¶ 13 (quoting *State ex rel. Rock v. School Emps. Retirement Bd.*, 96 Ohio St.3d 206, 2002-Ohio-3957, 772 N.E.2d 1197, ¶ 8). The court of appeals may properly vacate a trial court's order when the trial court issues the order without having jurisdiction to do so. *In re N.W.F.*, 2019-Ohio-3956, 147 N.E.3d 86, ¶ 12 (7th Dist.), citing *Cincinnati School Dist. Bd. of Ed. v. Hamilton Co. Bd. of Revision*, 87 Ohio St.3d 363, 368, 721 N.E.2d 40 (2000).

**{¶47}** A trial court retains jurisdiction to issue judgments in aid of the appeal and to address collateral matters pending appeal, such as contempt or sanctions under Civ. R. 11, Civ. R. 36, or Civ. R. 37. *LEXISNEXIS v. Murrell*, 2d Dist. Montgomery No. 29018, 2021-Ohio-3527, ¶ 6, quoting *In re S.J.*, 106 Ohio St.3d 11, 2005-Ohio-3215, 829 N.E.2d 1207, ¶ 9 (citing *State ex rel. Special Prosecutors v. Judges, Court of Common Pleas*, 55 Ohio St.2d 94, 97, 378 N.E.2d 162 (1978) and Painter & Pollis, *Ohio Appellate Practice*, Section 1:19 (Oct. 2020)).

**{¶48}** Here, the court issued its order to vacate on February 1, 2023, one day after Appellant filed her notice of appeal. Accordingly, the trial court lacked jurisdiction to issue an order vacating the January 20, 2023 judgment and issue the March 22, 2023 judgment.

**{¶49}** The parties addressed only the January 20, 2023 judgment in their appellate briefs, even though the briefs were filed after the March 22, 2023 judgment. Further, both parties agree in their briefs that plain error is the proper standard of appellate review because untimely objections were filed.

**{¶50}** Thus, we find that the trial court lacked jurisdiction to vacate its January 20, 2023 order and issue the March 22, 2023 judgment. We vacate this judgment.

**{¶51}** Appellant presents two assignments of error in appealing the court's January 20, 2023 judgment. Her first assignment of error asserts:

**The Trial Court Committed Plain Error When It Used The Substantial Compliance Doctrine**.

{¶52} We agree that the trial court erred by applying the substantial compliance doctrine in this case. Appellant asserts that the trial court erred by applying the substantial compliance doctrine to the extension provision in the lease because substantial compliance applies to matters of contract performance, not contract formation. She cites *Lake Ridge Academy v. Carney,* 66 Ohio St.3d 376, 379, 613 N.E.2d 183 (1993), *Ritchie v. Cordray*, 10 Ohio App.3d 213, 215, 461 N.E.2d 235 (10th Dist. 1983), and *Yocom v. Battig*, 9th Dist. Wayne No. 1868, 1983 WL 2272 in support. Appellant contends that an option can be accepted only in the manner provided for in the contract and it may not be exercised beyond the time provided therein. She asserts that the April 15, 2021 email from Appellee's counsel was not notice of an intent to extend the lease as required by the lease terms, and the June 14, 2021 email, while intended to constitute notice, was given to her 14 days after the expiration of the time within which to extend.

{¶53} Appellant further asserts that substantial compliance does not apply because Appellee committed a material breach by failing to give timely notice of its intent to extend the lease. She cites *Warren Concrete & Supply, Inc. v. Strohmeyer Contracting, Inc.*, 11th Dist. Trumbull No. 2010-T-0004, 2010-Ohio-5395, *Morton Bldgs., Inc. v. Correct Custom Drywall, Inc.*, 10th Dist. Franklin No. 06AP-851, 2007-Ohio-2788, and *Urology Servs. Inc. v. Greene*, 8th Dist. Cuyahoga No. 50205, 1986 WL 2937, (Mar. 6, 1986), and asserts that time is of the essence in an option contract and any delay beyond the time specified in the contract constitutes a material breach.

{¶54} Appellant also contends that substantial compliance is an equitable doctrine and equity does not permit relief to a lessee who fails to provide written notice of renewal in the absence of fraud, mistake or accident, and unaffected conduct of the lessor. She cites *Ahmed v. Scott,* 65 Ohio App.2d 271, 277, 418 N.E.2d 406 (6th Dist. Lucas 1979) and *CitiMortgage, Inc. v. Brown*, 2015-Ohio-5347, 45 N.E.3d 258 (1st Dist.). Appellant asserts that there is no allegation of misconduct, and equity does not relieve Appellee from its negligence.

{¶55} Appellant also argues that the trial court rewrote the lease by applying the substantial compliance doctrine and allowing a lease extension on terms different from those in the lease. She contends that the lease is a commercial lease which prioritizes the freedom of contract and the enforceability of the justifiable expectations of the parties,

as determined by the contract terms. Appellant asserts that the court substituted its judgment for the lease terms by applying substantial compliance to excuse Appellee's breach. She cites *Fifth Third Bank W. Ohio v. Carroll Bldg. Co.*, 180 Ohio App.3d 490, 495, 2009-Ohio-57, 905 N.E.2d 1284 (2d Dist.) and requests that we join the Second District Court of Appeals in holding that:

> [t]he fact that [the tenants] may have intended to maintain their interest in the lease long-term did not negate [their] obligation to exercise the renewal option, even if the [landlord] was aware of these intentions. If [the tenants] wanted to maintain the lease long-term, they needed to renew the lease in accordance with the contract terms.

**{¶56}** Appellee counters that Ohio courts, like many others, hold that a breach must be material to justify forfeiture, regardless of lease language. Appellee contends that courts have applied the substantial compliance doctrine to slight departures and omissions in renewal provisions in both commercial and residential lease agreements. They cite *McGowan v. DM Group IX*, 7 Ohio App.3d 349, 455 N.E.2d 1052 (10th Dist. 1982), *Lesh v. Moloney*, 10th Dist. Franklin No. 11AP-353, 2011-Ohio-6565 and *Ashland Global Holdings, Inc. v. SuperAsh Remainderman L.P.*, Franklin C.P. No. 22CV-2398, (Sept. 27, 2022) as examples. Appellee asserts that *SuperAsh*, *supra*, is directly on point, as the tenant there provided late notice of extension and the court found that it was inadvertent and the result of an honest mistake. The court ruled that substantial compliance was demonstrated of the intent to extend.

**{¶57}** Appellee asserts that the two emails sent by its counsel to Appellant demonstrated substantial compliance with the lease's notice provision and those emails, coupled with the nearly $1 million it spent to modify and renovate the building, evidenced its intent to extend the lease term. Appellee also refers to its offer to pay for the roofing repairs itself as establishing its intent to extend the lease term.

**{¶58}** Appellee cites *State ex rel. Preston v. Ferguson*, 170 Ohio St.3d 450, 457, 166 N.E.2d 365, 457-458 (1960), where the Supreme Court of Ohio held that a contract with an option to extend an original agreement is a present grant that extends the term of the original agreement if the option is exercised. Appellee concludes that an extension

operates not to form a new contract, but to extend the original agreement, which remains the governing instrument.

{¶59}  Appellee differentiates the cases cited by Appellant.  Appellee contends that *Ritchie v. Cordray*, 10 Ohio App.3d 213, 461 N.E.2d 325 (10th Dist. 1983), involved a real estate option contract where the plaintiffs paid the defendants for the "exclusive right and option to purchase" the defendants' real property and required written notice by the plaintiffs to the defendants by a specified date and time.  Appellee explained that the Tenth District held that a buyer must strictly comply with the time, manner, and place of acceptance because the option contract is an agreement to keep an offer opened for a particular time and limits an offeror from revoking the offer prior to that time period.

{¶60}  Appellee asserts that *Lake Ridge Academy v. Carney*, 66 Ohio St.3d 376, 613 N.E.2d 183 (1993), differs from the instant case as it concerned a reservation agreement, or an enrollment contract for school tuition and the court itself indicated that such cases  raise unique issues.

{¶61}  Appellee contends that *Yocom v. Battig*, 9th Dist. Wayne No. 1868, 1983 WL 2272, (Dec. 28, 1983), involved the right to revoke the exercise of an option to extend a commercial lease after the option to renew was already exercised.  Appellee reasons that the instant case involves whether substantial compliance with a renewal provision suffices to exercise the renewal period.

{¶62}  Appellee also contends that its notification to Appellant of the extension of the second renewal option is not a material breach.  Appellee cites Ohio cases and Section 241 of the Restatement of the Law 2d, Contracts (1981)[1], as the appropriate framework in determining whether a breach is material in the landlord-tenant context.

---

[1] That section provides:
In determining whether a failure to render or to offer performance is material, the following circumstances are significant:
(a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;
(b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;
(c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;
(d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;
(e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

Appellee asserts that the notice of renewal provision in the lease agreement is not a material term because failing to provide such notice does not defeat the fundamental purpose of the agreement. Appellee contends that the fundamental purpose of the lease is for Appellee to operate its medical marijuana dispensary while paying Appellant rent for occupying her premises.

{¶63} Appellee further contends that forfeitures are not favored in the law and equity may help one who makes an innocent, unintended error under a lease, especially here, when it spent nearly $1 million improving the property and Appellant suffered no prejudice from late notice. Appellee asserts that it is not asking the court to rewrite the lease and the trial court did not do so. Rather, Appellee maintains, the trial court merely applied substantial compliance to find that its slight 14-day delay in notice resulted from an honest mistake in thinking that its prior attempt to exercise the second option extension constituted effective notice.

{¶64} In reply, Appellant contends that the option to extend the lease in Section 2.2 is an option contract. Citing *Plikerd v. Mongeluzzo*, 73 Ohio App.3d 115, 122, 596 N.E.2d 601 (3d Dist. 1992), Appellant asserts that an option contract contains two elements: "(1) the offer to buy, sell, or perform some other act which does not become a contract until accepted; and (2) the binding agreement to leave the offer open for the specified time." Appellant reasons that the lease is an option contract because Appellee had the right to extend it and Appellant could not revoke that right. Appellant concludes that Appellee could only exercise the option in the manner specified in the contract and thus substantial compliance does not apply. Appellant cites residential and commercial lease cases where option contracts have been determined by the courts.

{¶65} Plain error is the proper standard of appellate review here. A failure to file objections or timely objections to a magistrate's decision forfeits all arguments on appeal except for claims of plain error. *In re Estate of Stotz v. Stotz*, 6th Dist. Sandusky No. S-22-014, 2023-Ohio-663. Civ. R. 53(D)(3)(b)(iv) provides that "[e]xcept for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion…unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b)." Both parties agree that plain error is the proper standard

of review as Appellant failed to file timely objections. *See* Appellant's Br. at 8; Appellee's Br. at 8.

**{¶66}** Admittedly, plain error is disfavored in civil cases. Plain error occurs only when "there is an obvious deviation from a legal rule that affected the defendant's substantial rights by influencing the outcome of the proceedings." *In re A.D.*, 7th Dist. Jefferson Nos. 22 JE 0016, 22 JE 0017, 2023-Ohio-276, ¶ 55, quoting *In re T.J.W.*, 7th Dist. Jefferson Nos. 13 JE 12, 13 JE 13, 13 JE 14, 2014-Ohio-4419. A court should find plain error in the "extremely rare case involving exceptional circumstance where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *In re A.D., supra* at ¶ 55, quoting *Kirin v. Kirin*, 7th Dist. Mahoning No. 08 MA 243, 2011-Ohio-663, ¶ 19 (quoting *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 679 N.E.2d 1099 (1997)).

**{¶67}** We find plain error in this case. The trial court accepted the parties' stipulations of law. However, "parties cannot concede or stipulate as to matters of law, only issues of fact." *Kocher v. Ascent Resources-Utica, L.L.C.*, 7th Dist. Jefferson Nos. 22 JE 0012, 22 JE 0014, 2023-Ohio-3592, ¶ 55, --N.E.3d--, citing *Crow v. Nationwide Mut. Ins. Co.,* 159 Ohio App.3d 417, 2004-Ohio-7117, 824 N.E.2d 127 (5th Dist.) (citing *Diversified Capping Equip., Inc. v. Clinton Pattern Works Inc.*, 6th Dist. Wood App. No. WD-01-035, 2002 WL 537998, (Apr. 12, 2002). The parties' joint stipulations concerning substantial compliance and equitable application concerned matters of law. The court accepted the stipulations and ruled solely based on substantial compliance. However, this was not the appropriate or applicable standard to apply in this case.

**{¶68}** The parties cited to *McGowan, supra, and Claypool, supra*, for the stipulation that hypertechnical compliance with a lease term requiring written notice to vacate the premises was unnecessary. However, both of those cases concern residential leases. *McGowan, supra*, at 350; *Claypool, supra*, at ¶ 2. The parties here had a written commercial lease.

**{¶69}** There are instances where courts have applied the substantial compliance doctrine to commercial leases where tenants failed to provide written notice of the intent to extend a lease. As Appellee notes, *Ashland v. SuperAsh*, C.P. Franklin No. 22CV-

2398, 2022 WL 19489239, (Sept. 27, 2022), is such a case. The Tenth District recently affirmed the trial court's holding in this case. *Ashland Global Holdings Inc. v. SuperAsh Remainderman Ltd. Partnership*, 10th Dist. Franklin No. 22AP-638, 2023-Ohio-3556.

**{¶70}** However, the court in this case based its determination on incorrect legal stipulations of the parties and failed to determine if substantial compliance or other equitable measures should even apply. The court completely bypassed whether the commercial lease in this case was clear and unambiguous and therefore required strict compliance. Section 2.2 of the lease is clear that Appellee was required to provide written notice to Appellant of its intent to extend into the second option period not later than 30 days before the end of the first extension option term.

**{¶71}** On April 16, 2021, one day after receiving the email from Appellee's counsel, Appellant informed counsel that he was mistaken that they were in the second option renewal period. She informed him of the proper beginning and ending period of the first extension period, and notified him that his email was insufficient to constitute proper notice. She referred him to Section 2.2 of the lease providing for proper notice. Appellee took no action until June 14, 2021.

**{¶72}** In *Kenney v. Chesapeake,* 2015-Ohio-1278, 31 N.E.3d 136, ¶ 20 (7th Dist.), we acknowledged that:

> A contract containing an option to extend an agreement constitutes a present grant which, if the option is exercised, operates to extend the term of the original agreement. [*Preston v. Ferguson,* 170 Ohio St. 450, 457-458, 166 N.E.2d 365 (1960)]. At that time, the contract "becomes one for both the original and the extended term." *Id.*

**{¶73}** We further recognized that "the provision of actual notice regarding the exercise of the option is generally valid unless violative of a contractual provision." *Kenney, supra*, at ¶ 68. We held that "[i]n an option contract, a party may exercise its option *only* in the manner provided in the contract." (Emphasis original). *Lake Ridge Academy v. Carney*, 66 Ohio St.3d 376, 380, 613 N.E.2d 183 (1993). *Id.*

**{¶74}** Since the trial court limited its decision to inapplicable equitable principles based on the parties' legal stipulations, we find plain error.

Case No. 23 MA 0013

**{¶75}** Accordingly, Appellant's first assignment of error is sustained.

**{¶76}** In her second assignment of error, Appellant asserts:

**The Trial Court Committed Plain Error When It Held That Appellee Substantially Complied With the Extension Provision Of The Lease.**

**{¶77}** Appellant contends that the uncontroverted facts show that Appellee did not substantially comply with the lease, even if the trial court properly applied that doctrine. She asserts that Appellee never gave her notice that it wanted to extend the lease for the second renewal period, even after she immediately informed him of his mistake as to the date and cited him to the proper notice provision in the lease. Appellant concludes that the trial court lacked any evidence for its finding that "the April 15, 2021 email left no doubt that it was [Appellee's] intention to continue its tenancy into the next term."

**{¶78}** We overrule this assignment of error as moot based on our sustaining Appellant's first assignment of error.

**{¶79}** For the reasons stated above, the trial court's decision is reversed and this matter is remanded for further proceedings consistent with this Opinion.

Robb, J., concurs.

D'Apolito, P.J., concurs.

Case No. 23 MA 0013

---

For the reasons stated in the Opinion rendered herein, the first assignment of error is sustained, the second assignment of error is moot, and it is the final judgment and order of this Court that the judgment of the Court of Court of Common Pleas of Mahoning County, Ohio, is reversed. We hereby remand this matter to the trial court for further proceedings according to law and consistent with this Court's Opinion. Costs to be taxed against the Appellee.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## <u>NOTICE TO COUNSEL</u>

**This document constitutes a final judgment entry.**